# IN THE COURT OF APPEALS OF IOWA

No. 15-1638
Filed August 17, 2016

**PATSY C. ALBERT, in her capacity as the**
**Trustee of the PATSY C. ALBERT REVOCABLE TRUST,**
    Plaintiff-Appellant,

**vs.**

**DELBERT CONGER and RUTH CONGER,**
    Defendants-Appellees.
_____

Appeal from the Iowa District Court for Keokuk County, Annette J. Scieszinski, Judge.

A landowner appeals the district court's ruling finding her neighbors had acquired a portion of her land by acquiescence. **AFFIRMED.**

Chandler L. Maxon and R. Ronald Pogge of Hopkins & Huebner, P.C., Des Moines, for appellant.

John N. Wehr, Sigourney, for appellees.

Considered by Vogel, P.J., and Doyle and Bower, JJ.

**DOYLE, Judge.**

Patsy Albert[1] and her longtime neighbors, Delbert and Ruth Conger, dispute the boundary lines of their adjoining properties. Following a trial to the district court in equity, the court found the Congers had acquired a part of Albert's property—not legally described or included in the Congers' deed—by acquiescence. The court then quieted title in the Congers' favor; Albert now appeals.

### I. Standard of Review.

First, we must determine the proper standard for review of the district court's determination. The Congers' counterclaims asserted various theories for quieting title in their favor, such as acquisition of the disputed property by way of adverse possession or the doctrine of acquiescence. "Adverse possession is established by a quiet title action, an equitable proceeding under [Iowa Code] chapter 649" (2015), and our review of an adverse-possession claim on appeal is de novo. *Sille v. Shaffer*, 297 N.W.2d 379, 380 (Iowa 1980). However, the doctrine of acquiescence is found in chapter 650, which specifies that an action brought under that chapter "is a special action." *See Ollinger v. Bennett*, 562 N.W.2d 167, 170 (Iowa 1997); *see also* Iowa Code §§ 650.4, .14. Section 650.15, titled "Appeal," provides: "There shall be no appeal in such proceeding, except from final judgment of the court, taken in the time and manner that other appeals are, *and heard as in an action by ordinary proceedings*." (Emphasis added.) Consequently, though we generally "hear a case on appeal in the same

---

[1] We refer to Albert as the owner of her property, though the property was transferred into her trust, which was thereafter substituted as the party in interest.

manner in which it was tried in the district court," *Johnson v. Kaster*, 637 N.W.2d 174, 177 (Iowa 2001), our appellate standard of review of an acquiescence claim is statutorily defined as correction of errors at law,[2] *see* Iowa Code § 650.15.  In any event, we will review the district court's disposition of this claim de novo for two reasons: (1) the parties appear to be in agreement that the claims were equitable and tried in equity and (2) our ultimate resolution of this issue is the

---

[2] Yet, we recognize the Iowa Supreme Court and this court have applied both standards of review on appellate review; in fact, the issue of whether a boundary-acquiescence claim is reviewed on appeal de novo or for correction of errors at law dates back to at least 1890.  *See, e.g., Ollinger*, 562 N.W.2d at 170 (hearing case "on appeal as an ordinary action" and reviewing for "assigned errors of law"); *Tewes v. Pine Lane Farms, Inc.*, 522 N.W.2d 801, 804 (Iowa 1994) (same); *Ivener v. Cowan*, 175 N.W.2d 121, 122 (Iowa 1970) ("Although the scope of our review differs with the nature of the action, whether it is statutory under section 650.6 . . . or in equity, the rules of law are the same."); *Brown v. McDaniel*, 156 N.W.2d 349, 350 (Iowa 1968) ("Although in its findings the trial court said this was an action in equity, we note that it was brought under chapter 650 of the 1966 Code, which provides that such actions are special actions and on appeal are to be heard as ordinary actions.  It appears that this case was tried as a special proceeding and it comes to us on assigned errors as in a law action." (citations omitted)); *Dillon v. Chicago & Nw. Ry. Co.*, 124 N.W.2d 543, 544 (Iowa 1963) ("Under section 650.15 this appeal is heard as in an action by ordinary proceedings.  The appeal is not de novo."); *Santee v. Uhlenhopp*, 169 N.W. 321, 321 (Iowa 1918) (questioning the proper standard of review and finding it was not de novo, but noting it was unclear if the "case was actually tried below on the equity side"); *Yocum v. Haskins*, 46 N.W. 1065, 1066 (Iowa 1890) (same); *Mayhugh v. Dea*, No. 15-0142, 2015 WL 5576950, at *2 (Iowa Ct. App. Sept. 23, 2015) (finding the acquiescence claim should be reviewed for correction of errors at law even though case had an equity designation and the parties asserted our review was de novo); *Gartin v. Farrel*, No. 13-0061, 2014 WL 69662, at *4 (Iowa Ct. App. Jan. 9, 2014) (finding a district court's acquiescence ruling should be reviewed on appeal for correction of errors at law, even though the underlying case was tried in equity); *Voga v. Younes*, No. 13-0657, 2013 WL 6097977, at *2 (Iowa Ct. App. Nov. 20, 2013) (same).  *But see Sille*, 297 N.W.2d at 381 ("Since this matter was tried by the court in equity it will be so considered by us and reviewed de novo."); *Ferrari v. Meeks*, 181 N.W.2d 201, 203 (Iowa 1970) ("In this de novo review we give weight to the trial court's findings of fact but are not bound by them."); *Mapes v. U.S. Bank Nat'l Ass'n, N.D.*, No. 14-1770, 2015 WL 6509426, at *2 (Iowa Ct. App. Oct. 28, 2015) (applying a de novo review because the parties agreed the matter was tried in equity); *McMahon v. Rousselow*, No. 14-0421, 2015 WL 576021, at *1 n.1 (Iowa Ct. App. Feb. 11, 2015) ("However, the parties tried this matter as one in equity, and therefore, our review is de novo."); *Eddy v. Perrine*, No. 13-1157, 2014 WL 2431416, at *1 (Iowa Ct. App. May 29, 2014) (same); *Paseka v. Weaver Farms L.L.C.*, No. 03-0417, 2004 WL 573788, at *2 (Iowa Ct. App. Mar. 24, 2004) (finding "the statutory formalities of a chapter 650 action were not observed" and the matter was tried in equity, requiring a de novo review).

same under a de novo review as it would be if we were reviewing for correction of errors of law. *See City of Davenport v. Shewry Corp.*, 674 N.W.2d 79, 82 (Iowa 2004) (choosing to review that case de novo for these reasons).

But, a de novo review "does not mean [the appellate courts] decide the case in a vacuum, or approach it as though the trial court had never been involved." *Davis-Eisenhart Mktg. Co. v. Baysden*, 539 N.W.2d 140, 142 (Iowa 1995). Rather, even in a de novo appellate review, "great weight" is accorded the findings of the trial court where the testimony is conflicting. *See id.* (citation omitted). This is because the trial court is in a far better position to weigh the credibility of witnesses than the appellate court. *See id.*; *Birusingh v. Knox*, 418 N.W.2d 80, 82 (Iowa Ct. App. 1987). Unlike this court, the trial court has a front row seat to observe the "witness's facial expressions, vocal intonation, eye movement, gestures, posture, body language, and courtroom conduct, both on and off the stand," as well as the witness's "nonverbal leakage" demonstrating "[h]idden attitudes, feelings, and opinions" that are not reflected in the cold transcript this court reviews. Thomas Sannito & Peter J. McGovern, *Courtroom Psychology for Trial Lawyers* 1 (1985). Consequently, the trial judge is in the best position to assess witnesses' interest in the trial, their motive, candor, bias, and prejudice. *See State v. Teager*, 269 N.W. 349, 351 (Iowa 1936).

### II. Acquiescence.

Pursuant to section 650.14, a boundary line contrary to a property's legal description may be established "[i]f it is found that the boundaries and corners alleged to have been recognized and acquiesced in for ten years have been so recognized and acquiesced in." "Acquiescence exists when both parties

acknowledge and treat the line as the boundary. When the acquiescence persists for ten years the line becomes the true boundary even though a survey may show otherwise and even though neither party intended to claim more than called for by his deed." *Ollinger*, 562 N.W.2d at 170 (citation omitted).

"[A]cquiescence must, in large part, be determined in light of the factual situation presented." *Davis v. Hansen*, 224 N.W.2d 4, 6 (Iowa 1974). Though the "party seeking to establish a boundary other than a survey line must prove it by 'clear' evidence," *Egli v. Troy*, 602 N.W.2d 329, 333 (Iowa 1999), some overt act is not required in order to establish acquiescence, *see Ollinger*, 562 N.W.2d at 171. Moreover, the "mere denial of knowledge of the existence of a fence or some other marker demarcating a boundary, or of a claim of ownership thereto will not defeat the claim of acquiescence to the boundary 'if the circumstances are such that [the landowner] should be required to take notice thereof.'" *Tewes*, 522 N.W.2d at 807 (alteration in original) (citation omitted).

"Acquiescence may be inferred by the silence or inaction of one party who knows of the boundary line claimed by the other and fails to dispute it for a ten-year period." *Egli*, 602 N.W.2d at 333. "It is sufficient knowledge if both parties are aware of the fence or other line and of the fact that both adjoining landowners are, for the required period, treating it as a boundary." *Sille*, 297 N.W.2d at 381.

### III. Disputed property.

Figure A



## RETRACEMENT PLAT OF SURVEY

of the West line of all that part of the East Half of the Northeast Quarter of Section 15 – Township 74 North – Range 11 West of the 5th P.M., Keouk County, Iowa, lying South and West of the public highway as now located over and across said eighty-acre tract.

**Figure B**

### IV. *Discussion.*

The land in dispute is owned by Albert and included in her deed's legal description. It is triangular and abuts the Congers' property on its western and

northern boundary. *See* figs. A & B.[3] The properties also abut a county highway, which has been moved and widened over the years.

Albert bought her property in 1972; the Congers bought theirs in 1993. In 1999, the Congers had vinyl fencing installed. The relevant portion of the vinyl fence runs south and ends at what "looks like an end post" of a metal woven-wire fence that is at least fifty years old.

In or around 2012, the county highway next to the parties' properties was repaved. Additionally, Albert updated her estate planning and transferred her property into a trust. Around the time of the project's conclusion, Albert requested a survey to determine her property's west boundary line. The survey evidenced that the Congers had built their fence and driveway upon Albert's property. Albert made an offer for the Congers to purchase the property, and the Congers declined, explaining that they owned the property.

Ultimately, Albert filed suit seeking to have title quieted in her favor, and the Congers filed counterclaims, seeking the same and asserting they had acquired the property by adverse possession or acquiescence. Trial to the district court was held in August 2015, and Albert and the Congers testified, as well as the prior owners of the Congers' property.

Albert testified that she had engaged in several conversations with Delbert over the years about the boundary between their properties. She stated she told Delbert his fence was on her property. She also testified that the Congers mowed that area, but over time the Congers kept moving further south and

---

[3] Figures A and B have been edited.

mowing more of Albert's property. However, she admitted she took no action after the Congers had the fence or drainage tile installed.

Conversely, Delbert testified he and his wife thought that piece of ground was part of the property set forth in their property's deed, and he had maintained and mowed that land since 1993. He testified that they always claimed the land as their own and that no one ever told them otherwise until after Albert had the survey completed.

Following the trial, the district court entered its ruling quieting title to the disputed land in favor of the Congers. The court found Albert had acquiesced that portion of her property to the Congers. Factually, the court summarized:

> In addition to the frequent and obvious acts of the Congers in mowing over Albert's land through the years, there were successive, equally apparent demonstrations of their belief that they owned the area incorporated into their lawn. Albert's legal silence in the wake of each of these acts is noteworthy, but her willingness to allow the sum without protest is emblematic of an actual acquiescence to the Congers' boundary practice.
>
> Over many years the Congers sponsored a march of improvements, in all respects acting as though they owned all the land along the road, north of Albert's field drive.
>
> . . . .
>
> The Congers' attitude is not, and has never been, one of arrogant land conquest. Consistent with their testimonial demeanors, [the Congers] sincerely believed from 1993 until sometime circa 2012 that their yard usage comported with their fee title. They had lived in the location of this property since the mid-1960s, and it simply appeared that way as they observed things in the neighborhood and as their personal experiences evolved. To the extent that there was a mention by Albert, on occasion, that they were using her land, it took on an anecdotal nature, as she apparently acquiesced in the boundary that was being used by all. There was never any mention or effort to fence, no competing gesture of maintenance, and no legal action or follow-up to the casual conversations.

Implicit in this ruling is the conclusion the court, as the trier of fact, found the Congers' version of events to be more credible. *See Norland v. Iowa Dep't of Job Serv.*, 412 N.W.2d 904, 909 (Iowa 1987); *see also Schutjer v. Algona Manor Care Ctr.*, 780 N.W.2d 549, 560-61 (Iowa 2010) (working "backward" to ascertain implicit credibility findings in workers' compensation commissioner's decision).

Upon our review, we agree with the district court's assessment. Given the longtime use and care of the property by the Congers, including the installation of a fence, Albert should have been alerted she needed to take action and dispute their use of her land if she believed they had encroached upon her property. The property was not hidden from view, like many boundary cases, where neither landowner had done anything with the disputed land over the years. Moreover, the Congers' use was open and available for all to see; they installed a fence over twenty years ago and continued to maintain the land. Albert took no action concerning the property until 2012, and even then, the Congers continued to care for the property. Here, Albert's inaction, coupled with the Congers' use of the property for at least twenty years, establishes a clear case of acquiescence of a boundary as contemplated by Iowa Code section 650.14. Consequently, we affirm the district court's ruling quieting title to the disputed land in favor of the Congers.

### V. Conclusion.

Because we, like the district court, find Albert acquiesced the portion of her property used by the Congers for more than twenty years, we affirm the court's ruling quieting title in the Congers' favor. Costs on appeal are assessed to Albert.

### VI. *Postscript.*

We include this postscript to address two other issues: (1) references to the exhibits at trial through examination of witnesses and (2) compliance with appellate rules of procedure. This court's mandate is to justly decide a high volume of appeals. *See* Iowa Ct. R. 21.11. The record at trial and the electronic appellate appendix submitted here did not facilitate that undertaking.

### A. *References to Exhibits at Trial, Especially in Land Disputes.*

This case is about the boundary line between properties; maps, plats, photographs, and other identifying exhibits are necessarily involved. Visualization of the subject matter of a land or property dispute is critical to a full understanding of the dispute. Demonstrative exhibits are great aids at trial—the attorneys place them before the judge or jury so that the fact-finder can visualize the facts of the case. But a cold transcript provides no visual reference to what the witness is indicating unless it is specifically identified in the record. For instance, counsel in this case asked, "[W]here did they install that?" The witness answered, "Just—it's right here. Right next to this right here . . . . Well, it's back here right in here." Obviously the witness was able to make gestures and indications for the benefit of the trial court, but such ephemeral demonstrations preserve nothing for our de novo review. Another example:

> Q. And just generally speaking, could you explain to us where Mrs. Albert's property is in this drawing? A. It's the triangle portion right there.
> Q. So if you could just identify the western boundary? A. Sure. It's this line right here.
> . . . .

> Q. And just so I make sure I understand what we're claiming as the post, can you just point it to me—point it out to me in the picture?  A. Right here.

Both parties asked witnesses these types of questions without having the witness markup or write on the exhibit in order to preserve and clarify the record for appellate review.  In some instances, there was not even a reference to which exhibit the witness was describing.  Even the court, at times, was unspecific:

> THE COURT: I need to be sure I know where the witness is on the map.  A. Yes.  Right there.
> THE COURT: The record should reflect that [the witness] has pointed to the area he was referencing for the court's orientation.

We do not mention this out of a fit of crankiness.  We realize preserving the record for appellate review can be cumbersome and frequently interrupts the flow of the trial.  However, a record must be made at trial for this court to review.  Attorneys, if they believe an exhibit and a witness's testimony about it is relevant, must make sure what the witness is indicating is specified in the record.

### B.  Appellate Court Rules.

Parties' compliance with appellate rules of procedure promotes judicial efficiency, thus aiding this high-volume court in doing its work to meet its mandate.  Consequently, the parties' compliance with rules governing the preparation of appendices is imperative.

Iowa Rule of Appellate Procedure 6.905(6) requires that the parts of the record of proceedings relevant to the issues raised in the appeal "shall be included verbatim on consecutively numbered pages and in the chronological order in which the proceedings occurred."  In their final briefs, the parties must reference to parts of the record with citations to the page or pages of the

appendix at which those parts appear.  *See* Iowa R. App. P. 6.904(4)(b).  Here, the parties' briefs did cite to a paginated appendix, but inexplicably, the appendix electronically filed with this court was not paginated.  We assume this was a mere oversight.

Additionally, our rules require that the omission of any transcript pages shall be indicated by a set of three asterisks at the location on the appendix page where the matter has been omitted.  Iowa R. App. P. 6.905(7)(e).  This was not done.  While the noted infraction may seem trivial, the violated rule is not just some rigmarole designed to create more work for the appellate lawyer or the lawyer's staff.  These visual clues alert us to a break in the continuity of a witness's testimony, thus facilitating our reading and understanding of the scads of transcript pages we must review each day.

In noting these rules violations, we do not in any way single out the parties' attorneys, for we have made similar observations in countless appeals. We all make mistakes.  All we suggest is that parties on appeal exercise a little more care in producing their appendices.

**AFFIRMED.**