# IN THE COURT OF APPEALS OF IOWA

No. 18-2013
Filed December 18, 2019

IN RE THE MARRIAGE OF JESSALYN C. BROCKMAN
AND MATTHEW C. BROCKMAN

Upon the Petition of
**JESSALYN C. BROCKMAN,**
        Petitioner-Appellant,

And Concerning
**MATTHEW C. BROCKMAN,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Page County, Timothy O'Grady,

Judge.


        Jessalyn Brockman appeals the child custody provisions of the decree

dissolving her marriage to Matthew Brockman.  **AFFIRMED.**


        Jay W. Mez (until withdrawal) and William C. Bracker, Council Bluffs, for

appellant.

        Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West

Des Moines, for appellee.


        Considered by Doyle, P.J., and Tabor and Schumacher, JJ.

**DOYLE, Presiding Judge.**

Jessalyn (Jess) Brockman appeals the child custody provisions of the decree dissolving her marriage to Matthew (Matt) Brockman. She contends the court erred in granting Matt physical care of their child. She instead asks for joint physical care or, in the alternative, for the child's placement in her physical care. We review this claim de novo with an eye to the child's best interests. *See In re Marriage of Murphy*, 592 N.W.2d 681, 683 (Iowa 1999).

If the court grants joint legal custody of a child, the court may award joint physical care if either parent requests it. *See* Iowa Code § 598.41(5)(a) (2017). "If the court denies the request for joint physical care, the determination shall be accompanied by specific findings of fact and conclusions of law that the awarding of joint physical care is not in the best interest of the child." *Id.* The court must consider the factors listed in Iowa Code section 598.41(3) in determining what custody arrangement is in the child's best interests.

The district court noted that both parents are suitable custodians, love the child, and want what is best for him. It noted that although each parent had contributed to raising the child in different ways, each had made a substantial contribution. The court found the child's "emotional and social development will be fostered by maximizing contact with both parents" and that both would do their best to attend to the child's best interests. But the court noted that joint physical care was not practical or in the child's best interests, noting:

> Despite their commendable cooperation, Jess and Matt cannot agree on which school [the child] should attend. They have not agreed on where [the child] should live. Jess and Matt plan to live more than eighty miles apart. It is not the Court's role to decide where the parties should live. It is likewise not the Court's role to

decide what school [the child] should attend. Neither party was willing to compromise on these issues.

After weighing the merits of each parent, the court determined that it is in the child's best interests to grant Matt physical care.

Jess moved the court to reconsider, enlarge, or amend its ruling. She stated, "If the court will award the parties joint physical care, Jess plans to move back to Clarinda, keep the child in the Clarinda School System and commute to her job in Omaha." The court overruled this request, noting that the distance between the parties' residences was a factor in deciding physical care, but "it was not the sole factor or even the most important factor." Instead, the court found the most significant factors to be Matt's suitability as a caretaker and his role in providing a significant portion of the child's care in recent years. It also cited Matt's involvement with the child's school and activities, his willingness to support the child's relationship with Jess when compared to Jess's willingness to support the child's relationship with Matt, and Matt's willingness to support the child's relationship with extended family. Finally, the court found "Matt's candor in his testimony" to be a factor in granting him physical care. It concluded by stating that after revisiting the evidence, it again concluded the child's best interests are served by placing the child in Matt's physical care.

We give weight to the trial court's findings. *Murphy*, 592 N.W.2d at 683. That is because, although our review is de novo, we do not "decide the case in a vacuum, or approach it as though the trial court had never been involved." *See Albert v. Conger*, 886 N.W.2d 877, 880 (Iowa Ct. App. 2016).

> Unlike this court, the trial court has a front row seat to observe the witness's facial expressions, vocal intonation, eye movement,

gestures, posture, body language, and courtroom conduct, both on and off the stand, as well as the witness's nonverbal leakage demonstrating hidden attitudes, feelings, and opinions that are not reflected in the cold transcript this court reviews. Consequently, the trial judge is in the best position to assess witnesses' interest in the trial, their motive, candor, bias, and prejudice.

*Id.* (cleaned up). After reviewing the record and giving the district court's findings the appropriate weight, we concur in its assessment of the evidence. So we affirm the grant of physical care to Matt.

Jess asks for an award of her trial attorney fees. An award of trial attorney fees in dissolution cases rests within the discretion of the district court, and we will only disturb the court's decision if it abused that discretion. *See In re Marriage of Francis*, 442 N.W.2d 59, 67 (Iowa 1989). "Whether attorney fees should be awarded depends on the respective abilities of the parties to pay." *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006) (citation omitted). In assessing the parties' respective ability to pay, we consider "the financial circumstances and earnings of each." *In re Marriage of Wessels*, 542 N.W.2d 486, 491 (Iowa 1995).

In denying Jess's request for trial attorney fees, the district court noted that Jess has the greater monthly income between the parties, each party received an equitable award of the marital assets, and that neither party has any significant debt. On this basis, the court determined that the parties can pay their own attorney fees and it is equitable to do so. We find no abuse of discretion.

Jess also seeks an award of her appellate attorney fees. The decision to award appellate attorney fees is within our discretion. *See Sullins*, 715 N.W.2d at 255. Like the trial court, we consider the needs of the party requesting the award and the ability of the other party to pay. *See id.* We also consider whether the

requesting party had to defend the trial court's ruling on appeal. *See id.* For the same reasons the trial court declined to award either party their trial attorney fees, we decline to award Jess her appellate attorney fees.

**AFFIRMED.**