# IN THE COURT OF APPEALS OF IOWA

No. 21-1366
Filed December 15, 2021

**IN THE INTEREST OF A.W.,**
**Minor Child,**

**Z.T., Mother,**
     Appellant.
_____

     Appeal from the Iowa District Court for Fayette County, Linnea M.N. Nicol,
District Associate Judge.

     A mother appeals the termination of her parental rights to her child.
**AFFIRMED.**

     John J. Sullivan of Sullivan Law Office, P.C., Oelwein, for appellant mother.

     Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant
Attorney General, for appellee State.

     Kimberly S. Lange, Edgewood, attorney and guardian ad litem for minor
child.

     Considered by Bower, C.J., Badding, J., and Doyle, S.J.*

     *Senior judge assigned by order pursuant to Iowa Code section 602.9206
(2021).

**DOYLE, Senior Judge.**

A mother appeals the termination of her parental rights to her child.[1]  She contends the State failed to prove the grounds for termination by clear and convincing evidence.  In the alternative, she asks for more time to reunite with the child.  She also contends termination is not in the child's best interest.  We review her claims de novo.  *See In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020).  In doing so, we give weight to the juvenile court's fact findings, especially those about witness credibility, although we are not bound by them.  *See* Iowa R. App. P. 6.904(3)(g); *In re C.A.V.*, 787 N.W.2d 96, 99 (Iowa Ct. App. 2010).

The child was removed from the mother's care after testing positive for methamphetamine at birth.  The juvenile court placed the child in the care of the paternal grandmother, who is a licensed foster parent and has custody of the child's siblings.  The child was adjudicated a child in need of assistance (CINA) in June 2020.

In the six months that followed the CINA adjudication, the mother completed a substance-abuse evaluation and began mental-health services.  But she missed visits with the child early on and did not attend appointments regularly.  Although the mother maintained her sobriety for a period, she missed three drug tests in December before testing positive for methamphetamine in January 2021.  The mother again failed to provide a sample for testing on many occasions before and after testing positive for marijuana and methamphetamine in May 2021.  Because

---

[1] The father's parental rights were also terminated.  He did not appeal.

the safety concerns that existed when the case began continued, the juvenile court directed the State to start termination proceedings.

The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(h) and (*l*) (2021). We may affirm if the record supports termination on either ground. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). The court may terminate under section 232.116(1)(h) if it finds:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a [CINA] pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The only issue is whether the child could be returned to the mother's care at the time of the termination hearing. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the term "at the present time" to mean "at the time of the termination hearing").

The mother argues that she fulfilled all expectations during the CINA proceedings "except that she struggled with relapse and sobriety." But her substance use is, of course, what led to the CINA adjudication. The mother has a long history of methamphetamine and marijuana use and lost her parental rights to four other children as a result. Yet the mother continued to use methamphetamine while pregnant with this child, who tested positive for methamphetamine at birth. Despite the services offered to the mother to help her

maintain sobriety, she failed to do so.[2] Her ongoing substance use prevents the return of the child to her care. *See In re J.S.*, 846 N.W.2d 36, 42 (Iowa 2014) (holding it is reasonable for the court to conclude "a parent's active addiction to methamphetamine is 'imminently likely' to result in harmful effects to the physical, mental, or social wellbeing of the children in the parent's care"); *A.B.*, 815 N.W.2d at 776 (noting "an unresolved, severe, and chronic drug addiction can render a parent unfit to raise children").

---

[2] In the termination ruling, the juvenile court made these observations about the mother's demeanor during her testimony at the termination hearing based on its familiarity with the mother at many other court hearings:

> On August 6, 2021, the Court observed the mother to be "tweaking" as she testified. The mother was unable to sit still, was shaking her leg, and picking her teeth during her testimony. The mother's behavior was beyond what would be expected of one who would be nervous while testifying and exhibited involuntary muscle movements that are common when someone is using or coming down from methamphetamine. The Court does not find the mother's testimony regarding her recent abstinence to be credible.

The mother argues this finding is "without basis" because "[n]o other party brought this up during questioning and the court did not submit any evidence that it was qualified as an expert to determine whether or not the mother was under the influence of methamphetamine."

We credit the juvenile court's observations because of its unique ability to view "the 'witness's facial expressions, vocal intonation, eye movement, gestures, posture, body language, and courtroom conduct.'" *Albert v. Conger*, 886 N.W.2d 877, 880 (Iowa Ct. App. 2016) (citation omitted). In contrast, we have only a cold transcript to review. *See id.* The juvenile court can determine whether a witness is exhibiting something more than nervous behavior common to those unaccustomed to testifying in legal proceedings. And the court's familiarity with the mother placed it in a position to judge her behavior specifically. The juvenile court can also determine whether a party's courtroom behavior suggests methamphetamine use. *See, e.g.*, *In re L.B.*, No. 17-1439, 2017 WL 6027747, at *2 (Iowa Ct. App. Nov. 22, 2017) (crediting the district court's observation that the mother's behavior pointed to methamphetamine use in determining the child could not be safely returned to the mother's care). But, regardless, the most damning evidence of the mother's continued substance use are the positive drug screens from January and May 2021 and her many missed tests over the last nine months of the proceedings, which we presume would have been positive.

The mother makes a passing reference to the requirement that the State "make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child." Iowa Code § 232.102(7). She claims the State "failed to make more efforts in assisting [the mother] in obtaining drug testing as this appeared to be the only major issue of concern." Even if this single statement is enough to raise a challenge to reasonable efforts on appeal, the mother failed to preserve the claim below. *See In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002) (noting a parent must complain to the juvenile court about the adequacy of the services "at the removal, when the case permanency plan is entered, or at later review hearings").

The mother also asks, in the alternative, for more time to reunite with the child. Iowa Code section 232.104(2)(b) allows the court to continue the child's placement for another six months if doing so will eliminate the need for the child's removal. But to delay permanency, the court must "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). Based on the mother's history, we are unable to make such a finding. *See B.H.A.,* 938 N.W.2d at 233 (noting a parent's past performance shows the quality of the future care that parent can provide).

Finally, the mother contends termination is not in the child's best interest. To terminate parental rights, the evidence must show termination is in the child's best interest. *See In re R.K.B.*, 572 N.W.2d 600, 602 (Iowa 1998). In determining a child's best interest, we look to the framework described in section 232.116, *see*

*In re A.H.B.*, 791 N.W.2d 687, 690-91 (Iowa 2010), which requires that we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child," Iowa Code § 232.116(2).

The child was removed from the mother's care at birth and has never been returned. More than one year passed from removal to the termination hearing—twice the time required by statute—and yet the mother failed to address her substance use and show she can maintain sobriety. This child is not equipped with a pause button. *See In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (holding a court must not deprive children permanency on the hope that someday the parent will be able to provide a stable home); *In re A.C.*, 415 N.W.2d 609, 614 (Iowa 1987) (noting that if the plan to reconcile parent and child fails, "all extended time must be subtracted from an already shortened life for the children in a better home"). While her mother has squandered her time, the child has thrived in the care of the paternal grandmother along with two siblings. Termination is in the child's best interest.

We affirm the termination of the mother's parental rights.

**AFFIRMED.**