# IN THE COURT OF APPEALS OF IOWA

No. 23-0443
Filed November 21, 2023

**IN RE THE MARRIAGE OF TAMMY J. DAUGHERTY**
**AND JEFFREY A. DAUGHERTY**

**Upon the Petition of**
**TAMMY J. DAUGHERTY, n/k/a TAMMY J. RYAN-ZUNIGA,**
        Petitioner-Appellee,

**And Concerning**
**JEFFREY A. DAUGHERTY,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Pottawattamie County, Michael

Hooper, Judge.


        Jeffrey Daugherty appeals the order denying his request to modify the

physical care provisions of the decree dissolving his marriage to Tammy

Daugherty.  **AFFIRMED.**


        P. Shawn McCann of McGinn, Springer & Noethe, P.L.C., Council Bluffs,

for appellant.

        Patricia Scheinost, Council Bluffs, for appellee.


        Heard by Schumacher, P.J., Langholz, J., and Doyle, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2023).

**DOYLE, Senior Judge.**

Jeffrey A. Daugherty appeals the order denying his request to modify the physical care provisions of the decree dissolving his marriage to Tammy J. Daugherty, now known as Tammy J. Ryan-Zuniga. He contends a substantial change in circumstances warrants modifying joint physical care of the parties' two youngest children to grant him physical care. Because we agree that continuing joint physical care serves the children's best interests, we affirm.

### I. Background Facts and Proceedings.

Jeff and Tammy are the parents of five children born between 2002 and 2015. When they divorced in 2019, they stipulated to joint legal custody and joint physical care of four[1] children, with physical care alternating on a weekly basis. The district court adopted the stipulation in the decree dissolving their marriage. Because Jeff was incarcerated at the time, the joint-physical-care arrangement did not begin until Jeff was released in January 2020.

Tammy remarried in 2020. The seeds of this modification action were sown in May 2021 after an incident between her spouse, Sean, and the youngest child. One of the older children recorded audio of Sean spanking and yelling at that child. In response, Jeff initiated proceedings in Nebraska to modify the dissolution decree. The action was dismissed for lack of jurisdiction, and the parties reached an agreement that neither parent or their significant others would yell at the children or use corporal punishment.

---

[1] Although the oldest child was still a minor, he was under a legal guardianship, which the parties' agreed would continue. That child has since reached the age of majority and was never a subject of the modification action.

In the months after the agreement, Tammy became concerned that Jeff was alienating her from the children. So, in September 2021, she moved to modify the decree, asking for physical care of the four minor children. Jeff counterclaimed for sole legal custody and physical care. The parties agreed there had been a substantial change of circumstances warranting modification and asked the court to determine custody. Trial began in July 2022 but was continued after two days to give the parties an opportunity to reach an agreement.

With no agreement in place by November 2022, the court entered a temporary order granting Jeff physical care of the two older children subject to visitation with Tammy when Sean was not present. For the two younger children, the order directed the parties to resume the joint-physical-care arrangement set forth in the decree under the condition that Sean was not in the residence during the weeks that Tammy had physical care. Finally, the order prohibited Sean from contact with the younger children and required that he attend counseling.

In February 2023, the parties agreed to make the provisions of the temporary order permanent as to the two older children.[2] But they remained in disagreement as to physical care of the two younger children. Tammy withdrew her request for physical care, asking the court to continue the joint-physical-care arrangement for the two younger children. Jeff continued to seek physical care of the two younger children and asked the court to prohibit Sean's presence during their visits with Tammy.

---

[2] The eldest of the two older children has since reached the age of majority.

After the final day of trial, the court entered its order. The court found that joint physical care was in the best interests of the two younger children and denied Jeff's request to modify physical care. Jeff appeals.

**II. Scope and Standard of Review.**

We review the modification order de novo. *See In re Marriage of McKenzie*, 709 N.W.2d 528, 531 (Iowa 2006). In doing so, we give weight to the district court's fact-findings, especially those concerning witness credibility, though we are not bound by them. *See id.* "We recognize that the district court 'has reasonable discretion in determining whether modification is warranted and that discretion will not be disturbed on appeal unless there is a failure to do equity.'" *See id.* (quoting *In re Marriage of Walters*, 575 N.W.2d 739, 741 (Iowa 1998)). We afford the district court "considerable latitude" in its determination "and will disturb the ruling only when there has been a failure to do equity." *In re Marriage of Okland*, 699 N.W.2d 260, 263 (Iowa 2005) (citation omitted).

**III. Modification.**

Jeff challenges the denial of his request to modify the physical care provisions of the decree to grant him physical care of the two younger children. He alleges that Sean has anger management issues and is abusive toward Tammy and the children, which Tammy has allowed. He also complains that the joint-physical-care arrangement separates the four minor children. On these bases, Jeff contends the best interests of the two younger children are served by placing them in his physical care.

In order to modify the custody provisions of a dissolution decree, the parties' circumstances must have substantially changed in a way that was not within the

parties' contemplation at the time the decree's entry. *See In re Marriage of Walton*, 577 N.W.2d 869, 870 (Iowa Ct. App. 1998). If a substantial change in circumstances is shown, the parent seeking modification "has a heavy burden and must show the ability to offer superior care." *In re Marriage of Malloy*, 687 N.W.2d 110, 113 (Iowa Ct. App. 2004); *accord In re Marriage of Spears*, 529 N.W.2d 299, 301 (Iowa Ct. App. 1994) (stating "once custody of a child has been fixed, it should be disturbed only for the most cogent reasons"). The controlling consideration in determining child custody is the children's best interests. *See In re Marriage of Fennelly & Breckenfelder*, 737 N.W.2d 97, 101 (Iowa 2007).

In ruling on the modification action, the district court stated that even setting aside the parties' July 2022 stipulation that circumstances have changed since entry of the dissolution decree, it "could . . . find a change in circumstances based on either parent's conduct." But the court found that both Jeff and Tammy love their children and can provide for their emotional, social, moral, material, and educational needs. It also noted that both Jeff and Tammy "have demonstrated that they can successfully co-parent when they put their animosity behind them." Because "neither parent has convinced the court that they are superior to the other," it determined that the parties should continue to share joint physical care of the two younger children as set out in the original decree.

In arguing for physical care, Jeff focuses largely on the allegations against Sean. In its ruling, the district court noted that Sean was its biggest concern throughout the modification proceedings:

> It was clearly disturbing to hear the audio recordings of Exhibits 8 and 9, and there is no excuse for Sean's behavior. "Spanking" is not illegal nor is it child abuse. However, striking a child in anger is never

appropriate and verbal abuse has detrimental effects that last a lifetime. To Sean's credit, he does not make excuses for his behavior and has accepted full responsibility for his actions and has taken appropriate steps to address his issues. Sean has completed anger management and a parenting class and the court agrees with the child and family reporter that Sean should be allowed back in the children's lives.

Because the district court was in a better position to make these findings, we defer to them. *See In re Marriage of Udelhofen*, 444 N.W.2d 473, 474 (Iowa 1989) (noting that determining witness credibility depends "not so much on what was said and done, as upon the implications of the words and actions of the parties" and thus "a trial court, as first-hand observer of witnesses, holds a distinct advantage over an appellate court, which necessarily must rely on a cold transcript"); *In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984) ("There is good reason for us to pay very close attention to the trial court's assessment of the credibility of witnesses. A trial court deciding dissolution cases 'is greatly helped in making a wise decision about the parties by listening to them and watching them in person.' In contrast, appellate courts must rely on the printed record in evaluating the evidence. We are denied the impression created by the demeanor of each and every witness as the testimony is presented." (internal citation omitted)). "A witness's facial expressions, vocal intonation, eye movement, gestures, posture, body language, and courtroom conduct, both on and off the stand, are not reflected in the transcript. Hidden attitudes, feelings, and opinions may be detected from this 'nonverbal leakage.'" Thomas Sannito & Peter J. McGovern, *Courtroom Psychology for Trial Lawyers* 1 (1985)). Thus, "the trial judge is in the best position to assess witnesses' interest in the trial, their motive, candor, bias and prejudice." *Albert v. Conger*, 886 N.W.2d 877, 880 (Iowa Ct. App. 2016).

Jeff notes that placing the two older children in his physical care and continuing the joint-physical-care arrangement for the two younger children will separate the siblings. Our past decisions have noted the general preference for keeping siblings together. *See, e.g., In re Marriage of Courtade*, 560 N.W.2d 36, 38 (Iowa Ct. App. 1996). But we also recognize that splitting custody of siblings "is warranted if good and compelling reasons exist. . . . Specifically, separation of children is justified when it is found to better promote their long-range best interests." *In re Marriage of Harris*, 530 N.W.2d 473, 474 (Iowa Ct. App. 1995) (internal citation omitted). Because the parties stipulated that Jeff should have physical care of the two older children, anything short of granting him physical care of the two younger children would cause a split. But unlike those cases in which physical care is split by granting each parent physical care of one or more children, the older and younger siblings will share the same household every other week. Because the long-range best interests of the two younger children are served by allowing maximum contact with both parents, the decision to split custody is warranted.

Because we agree that continuing the joint-physical-care arrangement set forth in the modification order serves the best interests of the two younger children, we affirm.

**AFFIRMED.**