# IN THE COURT OF APPEALS OF IOWA

No. 23-2027
Filed April 9, 2025

**GRINNELL MUTUAL REINSURANCE COMPANY,**
        Plaintiff / Counterclaim Defendant-Appellee,

**vs.**

**CURRY YARD ART, INC.,**
        Defendant / Counterclaim-Plaintiff-Appellant.
_____

Appeal from the Iowa District Court for Poweshiek County, Joel D. Yates,

Judge.

A landscaping company appeals from a declaratory judgment finding its

insurance coverage was voided by material misrepresentations. **AFFIRMED.**

Fred L. Dorr, West Des Moines, for appellant.

Sean M. O'Brien and Benjamin J. Kenkel of Dickinson, Bradshaw, Fowler,

& Hagen, P.C., Des Moines, for appellee.

Considered without oral argument by Ahlers, P.J., and Badding and

Langholz, JJ.

**BADDING, Judge.**

In August 2020, a now-infamous derecho windstorm blew through eastern Iowa. The storm damaged buildings, equipment, and inventory at Curry Yard Art, Inc. The company filed claims with its insurer, Grinnell Mutual Reinsurance Company. But after paying nearly $125,000 toward the claims, Grinnell grew suspicious that the claims were inflated.

Grinnell filed this action seeking a declaratory judgment that it owed no further claims payments under the insurance policy. Following a bench trial, the district court found that Curry Yard Art's owner had misrepresented the extent of damage his business sustained, voiding all coverage under the policy. Curry Yard Art appeals.

I. **Background Facts and Proceedings**

Curry Yard Art, Inc. was a landscaping business owned and operated by Richard Curry,[1] who ran the company out of a shop near Montezuma. He also kept landscaping equipment and inventory on site. Curry's business and its assets were insured under multiple coverages set forth in a Commercial Lines Insurance Policy issued by Grinnell Mutual Reinsurance Company ("Grinnell").

On August 10, 2020, a destructive derecho hit eastern Iowa. Curry submitted a claim under the Grinnell policy, seeking payment to compensate for wind damage to Curry Yard Art's buildings and other assets. An independent adjuster who visited the property on August 21 took photographs of the damage to

---

[1] For purposes of this opinion, we generally refer to "Curry" when describing the conduct and contentions of Curry Yard Art, Inc. There is no dispute that Richard Curry was an officer of Curry Yard Art at all times relevant to this appeal.

Curry's shop and compiled a report estimating a $41,865 replacement cost value for that building. The report also estimated a $15,894 replacement cost for a second building, referred to in the record as "Building 2," which Curry claimed as a total loss. The damage to Building 2 was neither inspected nor photographed because "all of the debris . . . [was] removed" at the time of the adjuster's visit. Instead, the adjuster's estimate for that building was "based on [a] description given by [Curry]."

Grinnell paid Curry $49,253 for the wind damage to both buildings. It also paid $4571 for losses to Curry's nursery stock and equipment. Curry considered these amounts insufficient, and Grinnell agreed to perform a re-inspection of the building damage. Meanwhile, Curry made additional claims for lost business income, temporary repairs, debris removal, damage to a Kubota excavator, and damage to a greenhouse. Grinnell paid nearly all of Curry's claims, remitting an additional $70,960 in insurance proceeds. But the parties continued to disagree about the value of Building 2. Curry submitted a proof-of-loss form claiming policy limits of $36,400 for damage to that structure, which he alleged had been renovated shortly before it was destroyed in the storm.

Grinnell asked Curry for documentation on the improvements to Building 2, but Curry said he had "nothing on that" other than the phone number of a contractor he had hired to perform them—"an Amish guy" known as "Buddy." In an examination under oath[2] with Grinnell's attorney, Curry described Building 2 as a

---

[2] The commercial property claims manager for Grinnell testified that an "examination under oath" is used to obtain "all the facts and information that's being claimed and presented" by the insured "so that we know exactly what was happening and what's being claimed."

structure with a rock foundation and "beams that went in the ground."  The floor was fake hardwood, and the exterior was finished with metal siding and a metal roof.  Curry said he used the space as an office and sale room.  He could not testify to the size of the building in its preexisting or improved form, and he had no record of the labor or material costs from the renovation.

Grinnell denied further coverage, alleging Curry had made material misrepresentations about the "existence of an addition/improvement to 'Building 2.'"  Grinnell also asserted Curry had made misrepresentations about claims for lost business income and damage to a John Deere Gator.  Grinnell advised Curry that these misrepresentations voided coverage under the policy's "Concealment, Misrepresentation or Fraud" condition:

> This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time.  It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:
> 1.  This Coverage Part;
> 2.  The Covered Property;
> 3.  Your interest in the Covered Property; or
> 4.  A claim under this Coverage Part.

In response to the decision, Curry provided a letter from the former owner of the property stating "[t]here were two buildings on the property at the time of sale" including a large shop and a "12' x 16' building" used for storage.  Grinnell was not swayed.

In October 2021, Grinnell petitioned for declaratory judgment, asking the district court to void the policy.[3]  Curry filed a counterclaim, seeking a declaration

---

[3] Grinnell's petition did not seek recovery of claims payments already made to Curry or a declaration regarding the propriety of those payments.

that his losses were covered and that Grinnell's claim-handling practices were "improper and unlawful." Following a bench trial, the district court found Curry had made material misrepresentations to Grinnell about his claims and, consequently, the policy was "null and void."

Curry appeals, claiming the district court applied the incorrect standard of proof and overlooked relevant facts in reaching its decision. Curry also asserts the district court erred by ignoring "Grinnell's unlawful claims handling practices" and declining to enter a judgment awarding damages to Curry.

## II. Standard of Review

Our review of a declaratory judgment action "depends upon how the action was tried to the district court." *Van Sloun v. Agans Bros.*, 778 N.W.2d 174, 179 (Iowa 2010). To determine whether the action was tried at law or in equity, which dictates the proper standard of review, we look at "the pleadings, relief sought, and nature of the case." *Id.* (cleaned up). Both parties invite us to apply a de novo review because that is the appropriate standard for cases tried in equity. *W. States Ins. v. Cont'l Ins.*, 602 N.W.2d 360, 362 (Iowa 1999). But actions on a contract—including an insurance policy—are ordinarily "treated as actions at law unless specific equitable issues are involved." *IMT Ins. v. Roberts*, 401 N.W.2d 228, 229 (Iowa Ct. App. 1986). The matter was also docketed as a law action, and the district court sustained objections during the parties' testimony—"the hallmark of a law trial."[4] *City of Riverdale v. Diercks*, 806 N.W.2d 643, 651 (Iowa 2011) (cleaned up). Accordingly, we are not convinced the court tried the matter in equity.

---

[4] We note, however, the court's rulings sustaining objections were "minor and did not have a significant effect on the proceedings." *Passehl Est. v. Passehl*, 712

Despite our reservations, we will use a de novo standard of review because we would reach the same conclusion under a review for correction of errors at law and because the parties appear to agree the action was tried in equity. *See City of Davenport v. Shewry Corp.*, 674 N.W.2d 79, 82 (Iowa 2004) (reviewing a case de novo for those reasons); *accord Albert v. Conger*, 886 N.W.2d 877, 880 (Iowa 2016). Even with a de novo review, we give "great weight" to the court's factual findings where the testimony is conflicting because "the trial court is in a far better position to weigh the credibility of witnesses than the appellate court." *Albert*, 886 N.W.2d at 880; *accord Hora v. Hora*, 5 N.W.3d 635, 645 (Iowa 2024).

## III.    Analysis

The district court found that "[m]uch of this case comes down to credibility." It "placed great emphasis on the testimony given by Richard Curry," whom it "did not find . . . to be credible." On appeal, Curry contends the court should have applied a heightened standard of proof in resolving this case, given Grinnell's allegations of "civil fraud." He argues that the "trial court's singular focus on [his] testimony" was incorrect and that the "court should have reviewed the entire record in order to determine whether Plaintiff Grinnell had satisfied its burden of proof by clear, satisfactory, and convincing evidence." *See State ex rel. Miller v. Rahmani*, 472 N.W.2d 254, 257 (Iowa 1991) (discussing the burden of proof "in the area of civil fraud").

---

N.W.2d 408, 414 (Iowa 2006); *see also Sille v. Shaffer*, 297 N.W.2d 379, 381 (Iowa 1980) (observing that a court's rulings on objections do not prevent a de novo review where no one claims the court improperly excluded evidence).

Grinnell asserts that Curry failed to preserve error on this argument because the district court's order does not state the standard it applied and Curry did not seek clarification through a motion under Iowa Rule of Civil Procedure 1.904(2).[5] We agree. Even if error had been preserved, we would reject Curry's argument because, as our supreme court explained in *Holliday v. Rain & Hail L.L.C.*, what Grinnell

> had to prove here was not common-law fraud for damages. Rather it had to prove a contractual defense . . . to void the polic[y] based simply on intentional concealment or misrepresentation; there was no language indicating that [Grinnell] had to prove all the elements of common-law fraud.

690 N.W.2d 59, 64 (Iowa 2004).

Like the policy at issue in *Holliday*, the policy here allowed Grinnell to decline coverage if Curry "intentionally conceal[ed] or misrepresent[ed] a material fact concerning . . . [t]he Covered Property . . . or [a] claim under this Coverage Part." Interpreting a similar policy provision, the Iowa Supreme Court has held that a misrepresentation about the extent of a claimed loss is "material" if the property at issue "is the object of the insurance policy which covers it." *Webb v. Am. Fam. Mut. Ins.*, 493 N.W.2d 808, 811 (Iowa 1992). It makes no difference whether a misrepresentation is "minor compared to the policy limits or undisputed loss"—any material false claim can preclude recovery. *Id.* However, "mere mistaken recollections" are not enough to void a policy. *Id.*

---

[5] The parties' pretrial briefs did not discuss the standard to be applied, and neither offered argument on that issue at trial. Instead, they agreed to make their legal arguments in proposed rulings submitted to the district court via email. *Cf.* Iowa R. Electronic P. 16.404 ("Legal briefs and memoranda must be electronically filed."). As a result, we do not have those arguments in the record before us.

Curry does not dispute the materiality of the misrepresentations alleged by Grinnell; he disputes the district court's conclusion that he made any misrepresentations at all. Defending his claim for damage to Building 2, Curry points to the policy's declarations page—which lists two buildings for coverage— as well as the letter from the former owner and aerial photographs depicting the property before the derecho. But this evidence misses the point. The record is clear that a shed-like second structure existed on the property sometime before the derecho.[6] The district court did not make a contrary finding. Rather, it concluded that the "alleged improvements" Curry cited in support of his policy-limits claim "did, in fact, not occur." Whether the record supports that determination is the relevant question here.

At trial, counsel for Grinnell asked Curry to describe his improvements to Building 2. Curry noted several of the upgrades he had discussed in his examination under oath, including new roofing, new siding, new flooring, and a roll-up door. But parts of his description departed from his prior statements. For instance, Curry testified that Building 2 was built on parallel "skids" that allowed it to be moved, contrary to his prior representation the structure was built on "beams that went in the ground." He also testified that the remodeled building featured an attached deck and "barn wood" walls. Curry had previously described metal siding during his examination under oath. He had not mentioned a deck.

---

[6] To be sure, Grinnell raised questions at trial regarding whether Building 2 was removed from the property before the derecho. It introduced a photograph taken by Curry's neighbor in June 2020 showing no building in the place where a shed-like structure had been depicted by aerial photographs. Curry testified that Building 2 was not pictured in the photo because he had temporarily moved it while a bulldozer leveled the ground.

Other elements of Curry's testimony conflicted with his allegations of a substantial renovation project. Curry acknowledged that the building had no plumbing at the time of the storm and that its only source of electricity was an extension cord from his shop. He also testified that there were no formal plans for the improvements—he just "told the [contractor] what [he] wanted it to look like, and [the contractor] did his best to come up with what [Curry] wanted." Curry maintained that his contractor was an Amish man called Buddy who "worked around." At the time of trial, Curry still did not know Buddy's last name or where he lived, and nobody had been able to reach him.

Grinnell's expert witness, architect Dirk Westercamp, testified that he reviewed public records and located no building permits for Curry's alleged improvements. Westercamp further testified that, upon studying photographs of the property, he found no signs of a "rock" foundation with "beams that went in the ground." Westercamp also examined debris-pile photos taken eleven days after the derecho, finding no evidence of the new construction materials described by Curry. Westercamp opined that Building 2 was, at most, a "dilapidated temporary structure . . . without footings, foundations or other substantial anchorage." He placed the building's value "between $1,183 and $3,236." According to Westercamp, if Curry's $36,400 claim was accurate, then Building 2's cost per-square-foot would have exceeded the price of hospital construction.

The district court credited the testimony of Grinnell's expert over Curry's inconsistent account of a never-photographed, never-documented, only-recently-completed remodeling project. We decline to disturb that determination on appeal. *See Hora*, 5 N.W.3d at 645 (noting "the district court has a front-row seat to the

live testimony, viewing the demeanor of both the witness as she testifies and the parties while they listen"). Deferring to the district court's credibility determination, we agree with the court's conclusion on our de novo review that Curry misrepresented the value of his improvements to Building 2.

Curry's material misrepresentation about Building 2 was sufficient to void all further coverage under the policy. *See Webb*, 493 N.W.2d at 812. We therefore do not reach Curry's arguments regarding the district court's other factual findings. We likewise find moot Curry's separate claim that the district court should have awarded him "damages" under the policy.

This leaves us with two other issues raised by Curry on appeal—neither of which is properly before us. First, Curry argues that the district court failed to consider "Grinnell's unlawful claims handling practices." Because Curry did not seek enlargement of the court's ruling under rule 1.904(2), that claim is not preserved. *See UE Loc. 893/IUP v. State*, 928 N.W.2d 51, 60 (Iowa 2019). Second, Curry contends he was entitled to additional policy proceeds under the doctrine of reasonable expectations, *see Luigi's, Inc. vs. United Fire & Cas. Co.*, 959 N.W.2d 401, 407 (Iowa 2021), because there "was no indication on the opening pages of the insurance policy agreement of any condition or limitation to [his] coverage." Among other problems, Curry raised this argument for the first time in his reply. So we do not consider it further. *See State v. Zacarias*, 958 N.W.2d 573, 581 (Iowa 2021).

**IV.**     **Conclusion**

For these reasons, we affirm the ruling of the district court declaring the policy void and releasing Grinnell from any further payment obligation.

**AFFIRMED.**