In re the MARRIAGE OF Thomas Arthur SPEARS and Sherri Jo Spears.

Upon the Petition of Thomas Arthur Spears, Petitioner–Appellee,

And Concerning Sherri Jo Smith, f/k/a Sherri Jo Spears, Respondent–Appellant.

No. 94–148.

Court of Appeals of Iowa.

Dec. 14, 1994.

---

**3.** The record is not clear as to when Amy and her husband actually got the divorce.

Sherri Jo Smith, Buffalo Grove, IL, pro se.

David P. McManus of Glasson, Grove, Sole & McManus, P.C., Cedar Rapids, for appellee.

Considered by DONIELSON, C.J., and SACKETT and CADY, JJ.

SACKETT, Judge.

Respondent-appellant Sherri Jo Smith appeals following a trial court order modifying the custodial provisions of her dissolution decree ordering her to pay child support and finding she disobeyed a temporary order enjoining her from moving the children outside of certain specified school districts in the Cedar Rapids area. We affirm the trial court in all respects.

The marriage of Sherri and petitioner-appellee Thomas Arthur Spears was dissolved in 1986. Sherri and Thomas have two children, Danielle, born October 10, 1981, and Adam, born August 21, 1983. Sherri and Thomas stipulated they would have joint legal custody of the children and Thomas would have primary physical care of the children until June 1, 1988, when primary physical care of the children would be transferred to Sherri. The trial court approved their stipulation and made the terms part of the decree dissolving the marriage. In October 1988, the decree was modified recognizing Sherri's physical care of the children but giving Thomas visitation on Monday, Tuesday and Wednesday, including overnight, every other week and on Thursday, Friday, Saturday and Sunday, including overnight, every other week. The decree also provided for holiday and summer visitation as well as providing the children attend school in one of three Iowa school districts in the Cedar Rapids area, namely, Cedar Rapids Community, Marion Independent, or College Community. Later, Sherri and Thomas agreed to change the arrangement to allow the children to live with Thomas every other week. The agreement was never formalized by a modification to the dissolution decree. Throughout this period, Thomas and Sherri were able to cooperate in the children's interests.

Problems arose when Sherri's new husband found a job in Buffalo Grove, Illinois, and Sherri sought a modification to allow her to move the children to the Buffalo Grove school district and to change Thomas's visitation. Thomas then sought primary care and child support.

The trial court found that while under the current decree Thomas is not the primary custodian, he has assumed the responsibilities of the primary care parent.

The trial court's decree contains a careful and complete review of the situation of each parent including the strengths and weaknesses of both situations. The trial court concluded Thomas had met the heavy burden necessary to change the primary care and specifically found: that while not currently named as the primary care parent, Thomas has assumed primary care of the children; Thomas has assumed primary responsibility for dealing with Adam's reading and learning problems while Sherri continues to deny the problems exist. The trial court further found Thomas has shown a superior ability to address the children's needs and the children continue to need his help and guidance on a regular basis. The trial court modified the decree to make Thomas the primary care parent, fixed Sherri's visitation and ordered she pay child support of $318 a month.

Sherri first contends the trial court should not have granted Thomas physical care. Her second contention is she should have been granted permission to modify the decree to allow her to move with the children to Buffalo Grove, Illinois, and put them in that school system and modify Thomas's visitation.

■ We consider these arguments together. We agree with Sherri that the parent seeking to modify the physical care has the burden to establish that conditions since the last decree or modification was entered have materially and substantially changed and that the person seeking physical care has the burden of showing he or she will render superior care. This burden stems from the principle that once custody of a child has been fixed, it should be disturbed only for the most cogent reasons. *In re Marriage of Mikelson,* 299 N.W.2d 670, 671 (Iowa 1980).

■ To change the custodial provision of a dissolution decree, the applying party must establish by a preponderance of the evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change. *In*

*re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983). The party seeking to take custody from the other must prove an ability to minister more effectively to the children's well being. *Id; see also In re Marriage of Gravatt*, 371 N.W.2d 836, 838–40 (Iowa App. 1985).

We recognize, as did the trial court, both Thomas and Sherri have assumed substantial care responsibilities, they have shared time with the children nearly equally. The trial court made the specific finding that despite what the decree said, Thomas has in essence assumed the position of the primary care parent. We also recognize, as Thomas argues, since Sherri is seeking to modify the provision for school attendance and visitation, she bears the burden on these issues.

■■■ The burden to change physical care is heavier than the burden to change the place of school attendance or to change the visitation schedule. *See In re Marriage of Jerome*, 378 N.W.2d 302, 305 (Iowa App. 1985). To justify a change of visitation, the petitioning party must show there has been a change of circumstances since the dissolution decree. *Id.* The burden in a modification of visitation rights is different from the burden in a child custody change. *Id.* Generally, a less extensive change of circumstances need be shown in visitation right cases. *Donovan v. Donovan*, 212 N.W.2d 451, 453 (Iowa 1973). We also agree with Sherri that the Iowa courts have recognized how mobile our society is and have been reluctant to limit a custodial parent to a geographic area where there is evidence the custodial parent has valid economic reasons for moving and the move is not predicated on an attempt to limit visitation of the noncustodial parent. *See Frederici*, 338 N.W.2d at 159; *In re Marriage of Weidner*, 338 N.W.2d 351, 360–61 (Iowa 1983); *In re Marriage of Day*, 314 N.W.2d 416, 420 (Iowa 1982); *In re Marriage of Deck*, 342 N.W.2d 892, 894–96 (Iowa App.1983).

■■■ This case presents an interesting issue on Thomas's actual burden because the trial court found, while the decree did not specify he was the primary caretaker, he functioned in that capacity. If Thomas is the de facto primary caretaker, then does the burden to change the de facto situation pass to Sherri? Because we find Thomas has shown the superior ability to care for the children, we find it unnecessary to determine whether he should have a lesser burden of proof under this factual situation. In assessing Thomas's ability, though, we do give weight to the fact that at all times he assumed as much or more care of the children than Sherri and granting Sherri's modification will change not only the children's schools and locations but also their relationship with their father.

Thomas, thirty at the time of the modification, has an electrical engineering degree from Iowa State University and has been employed by Rockwell International in Cedar Rapids for nine years. Thomas has remarried and he and his current wife have two other children, boys, born in 1989 and 1992. They reside in a five-bedroom home in Walford, Iowa.

Sherri is three classes short of a B.A. in journalism from the University of Iowa. Her current husband is a lawyer working in Buffalo Grove. They have a girl born in 1992. Sherri has a two-bedroom duplex in Cedar Rapids but spends substantial time in Buffalo Grove where her husband has a three-bedroom home and where he resides.

Sherri contends the alternating weeks custodial arrangement is not working and the children need stability and should be in her care on more of a full-time basis.

■■■ We credit both Sherri and Thomas with being concerned about their children's welfare and find their ability to work out what amounted to a shared custody prior to this dispute to be admirable. We recognize they both want to spend more time with the children. We have carefully reviewed the record de novo. Iowa R.App.P. 4. We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented. *In re Marriage of Steenhoek*, 305 N.W.2d 448, 452 (Iowa 1981). We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R.App.P. 14(f)(7). We considered the evidence and find we agree with the extensive

factual findings made by the trial court and, in assessing the findings, we conclude Thomas has shown his ability to be a superior custodial parent.

We agree with the trial court that Thomas should be the primary care giver, and we affirm the modification of the decree accordingly.

The next question is whether the trial court should not have ordered Sherri to pay support or whether the amount fixed for child support was too high. At the time of the hearing, Sherri had voluntarily quit her job to be a full-time homemaker. The trial court, therefore, applied Sherri's monthly income for the seven-month period prior to her terminating her employment to the child support guidelines. Sherri contends this is wrong because she had quit her job some time before the hearing and, while she had primary care of the children, she did not receive child support.

 Determining child support under the child support guidelines is actually a two-step process. The first step is to apply the custodial and noncustodial parents' actual incomes to the child support guidelines. Sherri has no income, consequently, this would result in no child support being owed by her. However, our inquiry does not end here. The policy of the state is that every parent contribute to his or her child's support. *See* Child Support Guidelines (Dec. 31, 1990). Some child support is required. *Id.* The amount is discretionary. *Id.* The question is what factors should be used in determining the amount of child support. The trial court in essence imputed earnings to Sherri based on her income when she was working. The amount of money Sherri could earn if gainfully employed is one factor, but not the only factor, to consider to determine the amount of child support she should pay. Other than Sherri's primary child care responsibilities for one child, we find no evidence her ability to find and maintain employment outside the home is limited. Sherri has nearly completed her B.A. degree; she has employment experience; and she has been employed at the wage considered by the trial court in the past. *See State ex rel. Lara v. Lara,* 495 N.W.2d 719, 721–22 (Iowa 1993); *In re Marriage of Vetternack,* 334 N.W.2d 761, 762–63 (Iowa 1983); *In re Marriage of Fogle,* 497 N.W.2d 487, 489 (Iowa App.1993). In *In re Marriage of Wahlert,* 400 N.W.2d 557, 560 (Iowa 1987), the court stated:

> current inability to pay has become less a consideration and long-range capacity to earn money has become more of a consideration; and ... any voluntariness in diminished earning capacity has become increasingly an impediment to modification.

We affirm the support order.

 The next question is whether the trial court was correct in finding Sherri willfully violated an injunction issued on June 15, 1992. The injunction prevented Sherri from moving the children from the specified school districts before the modification was acted on.[1] The trial court found Sherri violated the injunction by moving the children outside the school district in June and July and, while she claimed the move was for the summer only and not a permanent move, the home in Buffalo Grove was treated as her home, her duplex in Cedar Rapids was sublet and the children's furniture was moved to Illinois. Sherri was allowed to purge herself of contempt by paying $200 toward Thomas's attorney fees and complying for one year with all the terms of the decree of modification and, if Sherri so performed, she would be found to have purged herself of the contempt and the contempt would be dismissed.

We treat Sherri's brief division on this issue as a petition for writ of certiorari. Iowa Rule of Appellate Procedure 304 provides, in applicable part:

> [i]f any case is brought by appeal, certiorari, or discretionary review, and the appellate court is of the opinion that another of these remedies was the proper one, ... Any one of the foregoing remedies may under this rule be treated by the appellate court as the one it deems appropriate.

---

1. The injunction issued restrained Sherri from: Moving the minor children, Adam and Danielle Spears, outside of the school districts set forth in the Modification action of which are Cedar Rapids Community School District, the Marion–Independent School District, or the College Community School District unless the decree is modified in the future to allow her to do so.

Iowa case law imposes a special standard of review of the facts in contempt cases. *State v. Lipcamon,* 483 N.W.2d 605, 606 (Iowa 1992). If it is claimed that a ruling is not supported by substantial evidence, we examine the evidence, not de novo, but to assure ourselves the proper proof supports the judgment. *See id.; Palmer College of Chiropractic v. Iowa Dist. Court,* 412 N.W.2d 617, 619 (Iowa 1987). The finding of contempt must be established by proof beyond a reasonable doubt. *Phillips v. Iowa Dist. Court,* 380 N.W.2d 706, 709 (Iowa 1986). We are not bound by the trial court's conclusions of law and may inquire whether the trial court applied erroneous rules of law that materially affect its decision. *Patterson v. Keleher,* 365 N.W.2d 22, 24 (Iowa 1985). Proof of contempt in violating a court order requires a showing that there was a willful violation. *See Lipcamon,* 483 N.W.2d at 607; *Lutz v. Darbyshire,* 297 N.W.2d 349, 353 (Iowa 1980). No person may be punished for contempt unless the allegedly contumacious actions have been established by proof beyond a reasonable doubt. *Phillips,* 380 N.W.2d at 709.

The trial court found the evidence indicated Sherri moved the children outside of the named school districts from June 4, 1993 to August 3, 1993, and, while the utilities in her Cedar Rapids duplex were left in her name and she continued to receive mail there, she did not live in the duplex during the period and spent the bulk of this time in Buffalo Grove, Illinois, with the children. Sherri moved furniture there and it has not been returned. The trial court found evidence beyond a reasonable doubt that Sherri willfully violated the temporary injunction even though she did move the children back to Cedar Rapids for the start of the school year. We agree that the facts in the record clearly support this finding.

Thomas asks for attorney fees on appeal. We make no further award. Costs on appeal are taxed to Sherri.

**AFFIRMED.**