# IN THE COURT OF APPEALS OF IOWA

No. 23-0826
Filed May 22, 2024

**KATIE VENECHUK n/k/a KATIE VANDEWALKER,**
　　Petitioner-Appellant,

**vs.**

**GARY A. LANDHERR,**
　　Respondent-Appellee.
_____

　　Appeal from the Iowa District Court for Worth County, Blake H. Norman, Judge.

　　A mother appeals the district court's denial of her petition to modify her custody decree. **AFFIRMED.**

　　Andrew B. Howie of Shindler, Anderson, Goplerud, & Weese P.C., West Des Moines, for appellant.

　　Judith O'Donohoe of Elwood, O'Donohoe, Braun, White, LLP, Charles City, for appellee.

　　Considered by Schumacher, P.J., and Ahlers and Langholz, JJ.

**AHLERS, Judge.**

Katie Vandewalker and Gary Landherr are the parents of a child born in 2013. Katie and Gary never married each other. Katie has two other children from relationships other than with Gary. Katie's child with Gary is Katie's middle child.

In 2017, Katie petitioned to establish custody, physical care, visitation, and child support for her child with Gary. The parties settled the case, and the district court entered a decree incorporating their stipulation. The stipulation states that the parties have joint legal custody of the child, with Katie having physical care. It also contains this school-selection provision:

> The parties presently contemplate the child attending the St. Ansgar school district. In the event either parent desires the child to attend a school district other than St. Ansgar, and if the other party does not agree to such change in district, the party desiring to change the school district shall obtain prior court approval.

The stipulation also states that if the parties disagree about educational placement, they would submit the dispute to a mediator. In 2019, Gary filed a modification action, which led to the parties changing the designated mediator to a parent coordinator.

In 2019, Katie moved with the child to Riceville to live with her new husband. Gary continued to live in St. Ansgar. In 2021, Katie moved her oldest child out of St. Ansgar schools into the Riceville school district. Katie also wanted her child with Gary to attend school in Riceville, but Gary opposed changing the child's school. When mediation failed, Katie petitioned for modification of the custody decree, seeking to move the child to the Riceville school district. The district court denied Katie's petition, determining that circumstances had not changed enough

to justify changing the child's school district and changing schools was not in the child's best interests. Katie appeals.

This case is governed by Iowa Code chapter 600B (2022). However, when making determinations related to legal custody rights, we look to Iowa Code chapter 598, which governs dissolution-of-marriage actions, and cases interpreting chapter 598. *See* Iowa Code § 600B.40(2).

In light of the Iowa Supreme Court's recent decision in *In re Marriage of Frazier*, we take a moment to note that the district court had the authority to hear this matter. 1 N.W.3d 775, 779–81 (Iowa 2024). In *Frazier*, the parties had a specific provision in their dissolution decree guiding dispute resolution in relation to the parties' children's medical care. *Id.* at 778. Like Katie and Gary's stipulation, the parties in *Frazier* mandated that disputes be handled by a mediator or counselor. *See id.* at 778. The stipulation finished by stating "[n]either party shall initiate any legal action regarding the above issues, without first attempting to resolve the issue through a counselor/mediator." *Id.* at 781. After mediation yielded no agreement on whether the parties should vaccinate their children against COVID-19, one parent filed an application for vaccine determination, which the district court denied. *Id.* at 778. Our supreme court agreed with the district court's course of action, holding that the decree did not explicitly reserve the district court's jurisdiction on the medical issue because it did not make clear what kind of legal action was appropriate if the parties disagreed. *Id.* at 781. To end their impasse, the supreme court found that the only option available was to petition to modify legal custody. *Id.*

Although the dispute here is over the child's education rather than a medical matter as in *Frazier*, both are topics that fall within the scope of legal custody. *See* Iowa Code § 598.1(5) (defining "legal custody" to include rights and responsibilities to make decisions "affecting the child's legal status, medical care, education, extracurricular activities, and religious instruction"). Unlike in *Frazier*, the disputed provision in the decree declares the outcome, as opposed to instructing the parties to consult one another. That provision declares what school district the child will attend and provides guidance for dispute resolution. As Katie seeks to change that provision without agreement from Gary, *Frazier* requires a modification action. *See id.* at 781 ("[S]hort of a petition to modify the decree to award one of the parent's [sic] sole legal custody, the court lacks authority to do anything else.").

Because Katie filed a modification action, she met that part of *Frazier*'s requirement for invoking the court's authority to address the parties' dispute. However, *Frazier* also dictates that modifying the decree to resolve a dispute over one of the five legal-custody issues requires the party seeking modification to prove not only a material and substantial change of circumstances, but that the filing party should receive sole legal custody. *Id.* at 781–82. The filing party's failure to seek modification to receive sole legal custody "doom[s] any petition at the outset." *Id.* at 782. Here, Katie never sought modification to receive sole legal custody—which she would need to make the school-enrollment decision unilaterally—so her petition is similarly doomed. For this reason, we affirm the district court's decision to dismiss Katie's modification petition. While our reason for reaching the decision to dismiss the petition differs from that used by the district court, we note that the district court did not have the benefit of *Frazier* when it

reached its decision, so we intend no criticism of the court in our decision here. Likewise, we mean no criticism of the parties, as they also did not have the benefit of *Frazier* when choosing their courses of action.

**AFFIRMED.**

Schumacher, P.J., concurs; Langholz, J., dissents.

**LANGHOLZ, Judge** (dissenting).

The district court order originally granting Katie Vandewalker and Gary Landherr joint legal custody of their daughter and placing her in Katie's physical care also requires their daughter to attend the St. Ansgar school district unless the parents agree to change the school district or the court grants prior approval. After moving to Riceville—about twenty miles from St. Ansgar—Katie seeks to modify the order by setting the school district as the Riceville district instead. The majority holds that after *In re Marriage of Frazier*, 1 N.W.3d 775 (Iowa 2024), Katie cannot modify this school-district-setting provision—her only option is to seek sole legal custody. But I do not read *Frazier* to reach this issue. And I would leave it to the supreme court to extend *Frazier* and make this even bigger change to the statutory and equitable authority of Iowa's courts rather than making that leap ourselves.

So instead, I would follow our precedents holding that a court can modify a school-district-setting provision—like Katie seeks to do—when a party shows that there has been a material change in circumstances and the modification would be in the child's best interest. *See In re Marriage of Thielges*, 623 N.W.2d 232, 235 (Iowa Ct. App. 2000); *In re Marriage of Spears*, 529 N.W.2d 299, 302 (Iowa Ct. App. 1994). Applying this standard on our de novo review, I would reverse the court's denial of Katie's modification request. Katie's move to Riceville and enrollment of another child in the Riceville school district is a material change in circumstances. And as their daughter spends about two-thirds of her schooldays in her mother's care, attending the local school, with her half-sisters, less than two minutes away—rather than a twenty-five-minute care ride or an hour-plus car-and-bus trip—is in their daughter's best interest. I thus respectfully dissent.

I.

In *Frazier*'s first line, the supreme court cautioned, "The issue in this case is not whether the district court *ever* has the authority to resolve a dispute between separated parents over an important decision affecting their children, but rather *when* and *how* the district court may resolve that dispute." *Frazier*, 1 N.W.3d at 777. And then, the court held that a district court lacks authority to rule on "an application for vaccination determination" seeking to resolve the parents' dispute over whether to vaccinate their children against COVID-19. *See id.* at 777–78. But the "when" and "how" of the school-district dispute here is different from the vaccine dispute in *Frazier* in two important ways.

First—as the majority acknowledges—Katie filed a modification petition. This is the statutorily authorized procedure to modify a custody order or decree. *See* Iowa Code §§ 600B.26, .31A(1), .40(3) (2022) (governing modification proceedings under chapter 600B for unmarried parents); *id.* §§ 598.21D, .36, .41(8), 598B.202, .203 (governing modification proceedings of dissolution decrees). So unlike *Frazier*—with its "application for determination" that the court essentially held is not a thing—there is no question that Katie properly invoked the court's authority. *Frazier*, 1 N.W.3d at 779.

Second, unlike the decree in *Frazier*—which did not contain a provision requiring or prohibiting COVID-19 vaccination—the custody order here set the daughter's school district. So there is something to modify—not merely a free-floating best-interest-of-the-child question to answer. And because the provision mandating the school district is in the order governing the parties, I find it untenable that Iowa law would suddenly say there is no way it can be changed or removed.

Thus, I would not hold that this ongoing binding directive must remain immutable—subjecting the parties to contempt for its violation until their daughter is eighteen or their relationship deteriorates so much that modification to sole legal custody for one parent is warranted.

To be sure, the supreme court in *Frazier* said, "*This decree* was entered nearly ten years ago, and short of a petition to modify the decree to award one of the parent[]s sole legal custody, the court lacks authority to do anything else." *Id.* at 781 (emphasis added). But notice, the court's comment was carefully limited to "This decree." *Id.* That decree did not have a provision—like the school-district provision here—settling a disputed issue and binding the parties unless modified. And so the court reasoned that for the decree at issue there, the parties' only option was a modification proceeding to change the legal custody. It does not necessarily follow that modification of legal custody is the only option for *every* decree or custody order. Nor does it mean that all modification petitions are "doom[ed]" if they do not request such a change. *Id.* at 782.

If there were any doubt that *Frazier* does not end the court's power to consider Katie's request to modify the school-district provision, *Frazier* removes it by reaffirming that school-choice decisions, like this one, were "properly before the district court" in similar modification proceedings. *Id.* at 783–84 (citing *In re Marriage of Flick*, No. 20-1535, 2021 WL 2453111, at *5–6 (Iowa Ct. App. June 16, 2021)); *see also id.* at 784 (citing *In re Marriage of Laird*, No. 11-1434, 2012 WL 1449625, at *2 (Iowa Ct. App. Apr. 25, 2012)). The court in *Frazier* also clears away any suggestion that the original order should not have included the school-district-setting provision—explaining that "the court is allowed to make decisions

in the child's best interest" in "the initial custody decree." *Id.* at 781. Indeed, the court also said such a school-choice dispute "was properly before the district court as part of the parents' dissolution proceedings." *Id.* at 784 (citing *In re Marriage of Bakk*, No. 12-1936, 2013 WL 5962991, at *2 (Iowa Ct. App. Nov. 6, 2013)). And again, that it was proper in a custody proceeding for unmarried parents—like Katie and Gary—under chapter 600B. *See id.* (citing *Gaswint v. Robinson*, No. 12-2149, 2013 WL 4504879, at *1 (Iowa Ct. App. Aug. 21, 2013)).

The supreme court did not disavow any of these unpublished cases—it said they were proper. *Id.* So I would not read *Frazier* to give us leave to disregard our binding, published precedent that such a school-district-setting provision may be modified when a party shows that there has been a material change in circumstances and the modification would be in the child's best interest. *See Thielges*, 623 N.W.2d at 235; *Spears*, 529 N.W.2d at 302.

What's more, the court's emphasis in *Frazier* on the "entire statutory scheme governing dissolution proceedings and child custody disputes stemming from them" cuts in favor—not against—the court's authority to consider the modification request here. *Frazier*, 1 N.W.2d at 781. The parent in *Frazier* sought to find authority for the court to answer its free-floating best-interest-of-the-child question with an "application for determination." *Id.* at 778. And so the absence of any statutory language authorizing the application cut against the parent. But here, no one disputes we have a statutorily recognized modification proceeding. And the legislature knows how to limit the court's authority to modify provisions in a dissolution decree if it wants to do so. *See* Iowa Code § 598.21(7) (prohibiting modification of property distributions). Yet it has not done so for school-district-

setting provisions like the one here. Thus, consistent with *Frazier*'s admonition that this scheme is "strictly statutory," I would not judicially create a limitation on modification where the legislature has not. *Frazier*, 1 N.W.3d at 781 (cleaned up).

I concede that some of *Frazier*'s reasoning could be logically followed to reach the majority's conclusion. *See id.* at 781 (saying that "beyond the initial custody decree, . . . the Iowa statutory scheme places parental decisions with the parents, not the court"); *id.* at 779 (reasoning that court resolution of a medical dispute conflicts with the joint legal custodians' "right to equal participation in a decision affecting the children's medical care"). But *Frazier* itself warns us not to rely on dicta because "[t]he binding force of a decision is coextensive with the facts upon which it is founded." *Id.* at 782 (cleaned up). And based on this rule, the court in *Frazier* disavowed its prior dicta stating that "the court must step in as an objective arbiter, and decide" disputes "[w]hen joint legal custodians have a genuine disagreement concerning a course of treatment affecting a child's medical care." *Id.* at 783 (quoting *Harder v. Anderson*, 764 N.W.2d 534, 538 (Iowa 2009)). So I am wary of reading too much into *Frazier*'s dicta, especially where other reasoning in the opinion reaffirms the prior precedents that the dicta would be implicitly overruling with that broad reading.

Extending *Frazier* to restrict the court's power to modify provisions, like this school-district-setting provision, would also lead to problematic and odd results. If a provision setting a child's school district is unmodifiable, I would expect parents to be less likely to voluntarily agree to such a provision—like Katie and Gary did in their stipulation incorporated into the court order here—resulting in more contentious and time-consuming original proceedings. Or it might lead them to

seek decrees and orders leaving the issue unaddressed so they can roll the dice as to whether they can work it out or unilaterally make the choice and hope the other parent will be unable to undo it in court. I don't think any of these options are desirable. Nor are they mandated by the statute or the holding of *Frazier*.

And I struggle to reconcile this extension of *Frazier* with the decades of Iowa precedent that a parent with physical care may seek court approval to adjust a decree to accommodate a cross-country or cross-state move—and thus necessarily also change the school—merely by showing a material change in circumstances and that the move is in the child's best interest and without changing joint legal custody. *See In re Marriage of Frederici*, 338 N.W.2d 156, 159–60 (Iowa 1983); *In re Marriage of Hoffman*, 867 N.W.2d 26, 32–33 (Iowa 2015); *Thielges*, 623 N.W.2d at 235–38. Has *Frazier* implicitly overruled all this precedent too? And if not, why should it be harder for a parent to change a school twenty miles away than one two hundred miles away? We can avoid these questions if we do not extend *Frazier* beyond what it necessarily decided.

For all these reasons, I read *Frazier* to hold only that a district court lacks authority to consider a freestanding application for determination of whether a course of conduct is in a child's best interest—outside of any proper procedural vehicle and that vehicle's requirements. It does not remove a court's authority to modify a provision in a decree or custody order when the normal requirements for modification are met. And thus it does not displace our authority to grant Katie's petition to modify the school-district-setting provision if she shows that there has been a material change in circumstances and the modification would be in their daughter's best interest.

II.

Applying this correct standard, I have little difficulty concluding that Katie has met her burden to show that modification of the school-district-setting provision is warranted. "[T]o change the place of school attendance" set in a decree or custody order, "a less extensive change of circumstances need be shown" than when seeking to modify physical care. *Spears*, 529 N.W.2d at 302. We treat school changes like changes to visitation. *See id.* And so, a party need only show a material change in circumstances since the decree—not the much heavier burden of "a substantial change in circumstances." *Thielges*, 623 N.W.2d at 235; *see also In re Marriage of Salmon*, 519 N.W.2d 94, 95–96 (Iowa Ct. App. 1994). Still, as with any modification, the school change must also be in the child's best interest. *See Thielges*, 623 N.W.2d at 238.

Katie presented ample evidence of a material change in circumstances since the original order. At the time of that May 2018 order, she did not live in Riceville, a minute and a half drive—or a short bike ride—away from the Riceville school district's single building. Nor was Katie's older daughter already enrolled in the Riceville school district rather than the same district as Katie and Doug's daughter. Nor was Katie's younger daughter getting ready to enroll in preschool at the Riceville school district in just a few months.[1] Each of these is a material change in circumstances—with them all together, Katie easily meets her minimal burden on this first step on the modification analysis.

---

[1] At the modification hearing in April 2023, Katie testified that her then-two-year-old daughter would enroll in preschool at the Riceville school district in the fall of 2023. While presumably that daughter is now also attending the school with her two older half-sisters, I must consider the facts at the time of the hearing.

Gary contends the move is not a material change because before moving into town, Katie had been living about five miles outside of Riceville for several years and had not sought modification. But this is the wrong comparison—we look for a change from the circumstances at the time of the original order. At that time, Katie was living with family in Northwood or Grafton.[2] Either of those towns was over thirty miles from Riceville, where Katie now lives. And while those residences also required some travel to the school in St. Ansgar, neither was less than two minutes away from the alternative choice of the Riceville school building. Such a move may not be a substantial change that would alone justify modification of physical care, but it is material.

Gary also disputes whether their daughter's half-sisters' attending a different school than her is enough of a change. But Katie testified about material differences, including the half-sisters no longer being able to ride the bus or drive together and different school calendars that would result in the girls not having days off together. As I'll discuss further below in considering whether modification is in their daughter's best interest, these differences—especially alongside Katie's move to be near the half-sisters' school—are a material change warranting modification of the school-district-setting provision.

Turning to that best-interest step of the analysis, all these same facts support finding that attending the Riceville school district would better serve their daughter's interest than attending the St. Ansgar school district. To be clear—especially for any Saints reading—I do not suggest that Riceville is a better school.

---

[2] The record is unclear when Katie moved between these two small towns.

While the parties spent much time and effort litigating the relative academic quality of the St. Ansgar and Riceville school districts, I do not find they shifted the balance toward either school on this basis. *See Hoffman*, 867 N.W.2d at 35–36 (finding parents had failed to show any material difference in the quality of two Iowa schools and criticizing the soundness of doing so based on data metrics). Nor do I give weight to any inconvenience for either parent in having to travel more with either school district. *See In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007) (noting that our guiding principle is "what is best for the *child*"—not what is "fair[est] to the [*parents*]").

Rather, I find that their daughter would benefit from attending the school just down the road from the home where she spends most of her time. Remember, she is placed in Katie's physical care—not the joint physical care of both parties. And so about two-thirds of her schooldays she will be coming or going from Katie's home in Riceville. That trip takes a minute and a half in the car. It's easily bikeable for a child. And it wastes much less time in transit each day than the trek from Katie's Riceville home to St. Ansgar, which takes about twenty-five minutes by car or an hour and fifteen minutes by school bus (and the car-ride to the bus stop). Each way.

Gary points out that Katie and their daughter had been managing the travel from a similar distance before they moved to Riceville. True enough. But that doesn't address the proper question: whether it would be better for their daughter, now that she has a school nearby, to not spend an hour or more in the car each day when she could be sleeping in later, playing, spending time with her half-sisters, or doing something else more beneficial. Gary also offers to take on more

of the driving duties to minimize the inconvenience for Katie.  Yet this still misses the point because regardless of whether Gary or Katie is driving, their daughter is stuck in the car needlessly.  This is not in her best interest.

Considering their daughter's long-term interests shows further benefits from attending the local school in the town where she will spend most of her time.  The downsides of the travel time will only increase as she gets older and becomes more involved in school activities with extra evening or weekend trips.  Katie testified too about her concern that as her daughter gets to driving age, the extended distance she would have to travel increases the possibility of accidents and winter weather challenges.  But beyond just the travel-time benefits, attending the local school would also help her develop deeper relationships with the other kids in the neighborhood and her community by sharing those same social, academic, and athletic ties.  While some of these long-term benefits are still to come—their daughter was only in third grade at the time of the modification hearing—it makes sense for the change of schools to occur sooner rather than later, when adjustment would likely to be more difficult because relationships are more established.

Their daughter would also be better served by attending the same school that her older half-sister is attending and her younger half-sister is expected to attend.  Fostering a strong relationship with siblings and half-siblings is a key factor to consider in weighing the best interest of the child.  *See In re Marriage of Orte*, 389 N.W.2d 373, 374 (Iowa 1986).  And while the three half-sisters are in different grades, being in same school district would still foster their relationship—and thus benefit Gary and Katie's daughter—in several ways.  They could travel to school

together. Indeed, Katie testified about their daughter's confusion and disappointment that she has not been riding to school with her older sister since she started at Riceville. They can share in common school activities and experiences, including rooting for the Riceville Wildcats, or for the younger two girls who are not in special education, eventually having the same teachers in different years and comparing their experiences. And as an added benefit, they will have time off together on the same school calendar for breaks, in-service days, and weather-related delays and cancelations.

I recognize that Gary feels a greater connection with their daughter because she is attending the St. Ansgar schools—the same as he did and in the same town where he still lives. And her attendance at the Riceville schools may inconvenience him with greater travel to maintain his same level of involvement in her school activities. But we must focus on their daughter's best interest. *See Hansen*, 733 N.W.2d at 695. And this change of school district does not alter the amount of his visitation. So I cannot say that the change would affect their daughter's relationship with Gary enough to outweigh the other benefits to her.

What's more, the district court found—and I agree—that Katie's move and the school-district change is not motivated by a desire to undermine Gary's contact with their daughter. Katie married a man serving as a deputy sheriff who is required to live in Howard County, where Riceville—but not St. Ansgar—is located. She was unhappy with the special education services that her older daughter was receiving from the St. Ansgar school district and believed that she would be better served by the Riceville school district. And now she seeks to send the half-sisters together to the same, local school and to avoid the extended travel time between

Riceville and St. Ansgar for their daughter. These are just as legitimate reasons as moves by a physical-care parent to pursue a new job opportunity. *See Frederici*, 338 N.W.2d at 160; *Thielges*, 623 N.W.2d at 238. And I see no basis for concluding that some ulterior motive alters the equitable result here. *See Frederici*, 338 N.W.2d at 160.

In sum, now that Katie has moved to Riceville and sent at least one of their daughter's half-sisters to the Riceville school district, it is in Gary and Katie's daughter's best interest to attend the Riceville school district too—rather than continuing to travel back to the St. Ansgar schools. This is a material change of circumstances that warrants modifying the school-district provision of the original order requiring their daughter's attendance in the St. Ansgar school district. And the supreme court's decision in *Frazier* does not remove the authority of the courts to make this change. I would thus reverse the district court's denial of Katie's petition to modify the school-district-setting provision and remand for entry of an order setting their daughter's school as the Riceville school district to be effective at the start of the next school year.