# IN THE COURT OF APPEALS OF IOWA

No. 24-0055
Filed September 4, 2024

IN RE THE MARRIAGE OF STEVEN PAUL RICHARD AWE
AND MICHAELA ANN AWE, n/k/a MICHAELA ANN HALE

Upon the Petition of
**STEVEN PAUL RICHARD AWE,**
        Petitioner-Appellee,

**And Concerning**
**MICHAELA ANN AWE, n/k/a MICHAELA ANN HALE,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Hardin County, James C. Ellefson,

Judge.

        A mother appeals the district court's order modifying the physical-care

provisions of a dissolution decree.  **AFFIRMED.**

        Sonia M. Elossais of Carr Law Firm, P.L.C., Des Moines, for appellant.

        Steven Awe, Iowa Falls, self-represented appellee.

        Considered by Badding, P.J., Langholz, J., and Vogel, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2024).

**LANGHOLZ, Judge.**

Michaela Hale[1] appeals an order modifying the decree dissolving her marriage with Steven Awe by placing their children in his—rather than her—physical care. Hale argues that Awe failed to show a substantial change in circumstances or that modifying the children's physical-care placement is in the children's best interests.

But on our de novo review, giving the district court's fact findings due deference, we conclude that Awe has met his heavy burden to show that modification is warranted. Hale's 300-mile move to Missouri is a substantial change in circumstances. And given Hale's repeated actions to impair the children's relationships with Awe and Awe's more stable home environment, placing the children in Awe's physical care rather than Hale's is in the children's best interests. We thus affirm the district court's modification order.

I.

Awe and Hale were married for six years and share a daughter and son, who are both under the age of ten. When the parties divorced in May 2021, the district court granted them joint legal custody of their children and placed the children in Hale's physical care. At the time, Hale was living in Estherville and Awe was living in Iowa Falls. In the summer of 2021, Hale moved with the children to Kirksville, Missouri—around 300 miles away—to pursue a new relationship. Hale did not notify Awe of the move. Instead, she lied to him and told him they were at

---

[1] In the district court, Hale used other last names. But on appeal, she and Awe both state that Hale is her current last name and consistently refer to her by that name. We thus do the same.

her vacation home. About a year later, while still living in Kirksville, Hale began a job that required her to be in Sigourney, Iowa for several months. And even though it was a two-hour commute each way, she enrolled the children in the Sigourney schools for this time. Again, she did not inform Awe.

Awe eventually learned from another source that the children were attending Sigourney schools and that their school had scheduled an October 2022 meeting to discuss the youngest child's individual education plan. Awe decided to attend the meeting. But when Hale arrived and saw Awe waiting for the meeting, she fled with the children and refused to attend. The same day, Hale petitioned for relief from domestic abuse, alleging among other things that Awe had carried "a gun in to the school [and] the [principal] did not care!" And the court eventually canceled the protective order issued in response to that petition about a month later without a hearing.

Two weeks after the school incident, Awe filed a modification petition, seeking to place the children in his physical care. And the district court held a one-day trial, at which both parties represented themselves, about a year later.

At trial—in addition to the conduct described above—Awe showed that Hale repeatedly withheld visitation. That included a two-month period that prevented the children from attending Awe's wedding to his new wife as had been stipulated by the parties. And despite the distance between the parties, Hale refused to avoid scheduling medical appointments during Awe's visitation or to adjust the visitation schedule when one of the children was sick. Indeed, she once made unfounded allegations of neglect—and then she and her new fiancé made repeated threats against the child-welfare investigator—when Awe tried to schedule a follow-up

medical appointment with their child's original Iowa doctor rather than a Missouri doctor with whom she kept scheduling appointments during Awe's visitation.

Awe also showed that his home environment was more stable. Awe's new wife is a calming, positive influence on the household, who "demand[s] good conduct from him." By comparison, Hale's new fiancé—also the father of Hale's youngest child—repeatedly showed himself "to be contentious and hot-headed" and negatively influencing Hale and the children's relationship with Awe.[2] Photos showed contrasting living conditions—with "filth, poor housekeeping and inappropriate care of pets" at Hale's home and appropriate conditions at Awe's. And the children were repeatedly sent to school and Awe's visitations in dirty clothes. Indeed, their daughter was at least twice sent to the nurse's office at school to change her clothes because of their lack of cleanliness or odor.

In a detailed and thoughtful decision, the district court agreed with Awe and modified the decree to place the children in his physical care. The court found that both parties had "credibility issues." So it "proceed[ed] cautiously in its fact finding and attempt[ed] to rely on facts that are undisputed or that find significant corroboration in the record." Still, the court found that Hale's 300-mile relocation from Estherville to Kirksville, Missouri was a substantial change in circumstances. And it found that modifying the children's placement would be in the children's best interests. The court explained, "while not blameless in the parties' interactions, [Awe] has demonstrated a commitment to and an ability to minister more effectively to the children's well-being." And it reasoned that Hale, in contrast, has shown "an

---

[2] While it seems Hale and her fiancé may now be married, we base our facts on the evidence in the record at the time of the modification trial.

ongoing commitment to impairing the relationship between the children and their father, assisted by her current [fiancé]" and a "commitment to putting her wants and needs over the children's well-being." Hale now appeals.

II.

We review a district court's decision to modify the physical-care provisions of a dissolution decree de novo. *Thorpe v. Hostetler*, 949 N.W.2d 1, 4 (Iowa Ct. App. 2020); *see also* Iowa R. App. P. 6.907. We give the district court's fact findings "weight and defer especially where the credibility of witnesses is a factor in the outcome." *Hora v. Hora*, 5 N.W.3d 635, 645 (Iowa 2024) (cleaned up). This is because "the district court has a front-row seat to the live testimony, viewing the demeanor of both the witness as she testifies and the parties while they listen, whereas our review is limited to reading black words on a white page of a sterile transcript." *Id.* And we recognize that this advantage "greatly help[s]" the district court "in making a wise decision about the parties" and their children. *In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984) (cleaned up).

To alter a physical-care provision in a dissolution decree from one parent to another, a party must first prove by a preponderance of the evidence there has been a substantial change in circumstances after the entry of the decree. *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983). The change must be more or less permanent, not originally contemplated by the court, and affect the best interests of the children. *Id.* A parent who proves a substantial change in circumstances must then prove "an ability to minister more effectively to the children's well being." *Id.* This is a "heavy burden" because "once custody of children has been fixed it should be disturbed only for the most cogent reasons."

*Id.* But when modification is in the best interests of the children and will offer the children superior care, the burden is met. *See In re Marriage of Spears*, 529 N.W.2d 299, 301–02 (Iowa Ct. App. 1994).

To decide the party offering superior physical care, "[t]he most paramount consideration is the best interest of the children." *In re Marriage of Gravatt*, 371 N.W.2d 836, 838 (Iowa Ct. App. 1985). We seek "to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). And we are guided by the factors in Iowa Code section 598.41 and *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974)*. See Gravatt*, 371 N.W.2d at 838.

Hale argues Awe failed to show either a substantial change in circumstances or that modifying physical care is in the children's best interest. But Hale's 300-mile move from northwest Iowa to Missouri easily satisfies Awe's requirement to show a substantial change in circumstances warranting modification. When a parent like Hale, who has "joint legal custody and physical care[,] . . . relocate[es] the residence of the minor child to a location which is one hundred fifty miles or more from the residence of the minor child at the time that custody was awarded, the court may consider the relocation a substantial change in circumstances." Iowa Code § 598.21D (2022). So the district court was well within its statutory discretion to find that relocating the children from Estherville to Kirksville is a substantial change in circumstances. We see no reason to disagree.

Turning to the second step of the modification analysis, we also agree with the district court that placing the children in Awe's physical care is in the children's best interests. Hale's consistent refusal to support Awe's relationship with the

children, inability to communicate and involve him in medical and educational decisions, and withholding of visitation all weigh heavily in favor of placement with Awe rather than Hale. *See id.* § 598.41(3)(e) (requiring consideration of "[w]hether each parent can support the other parent's relationship with the child"); *id.* § 598.41(3)(c) (requiring consideration of "[w]hether the parents can communicate with each other regarding the child's needs"); *id.* § 598.41(1)(c) ("The court shall consider the denial by one parent of the child's opportunity for maximum continuing contact with the other parent, without just cause, a significant factor in determining the proper custody arrangement."); *see also In re Marriage of Quirk-Edwards*, 509 N.W.2d 476, 480 (Iowa 1993). So too does the comparative stability and suitability of Awe's home favor placing the children with him. *See* Iowa Code § 598.41(3)(a) (requiring consideration of "[w]hether each parent would be a suitable custodian for the child"); *Winter*, 223 N.W.2d at 166 (factoring in the nature of the proposed environment).

Hale argues that the district court's findings are "contradictory, rather than cogent" because the court relied on evidence presented by Awe despite its credibility concerns about both parties. But rather than weakening the court's findings, we find that the court's acknowledgments of its concerns and explanation that it thus "proceed[ed] cautiously in its fact finding and attempt[ed] to rely on facts that are undisputed or that find significant corroboration in the record" strengthens them. And on our de novo review of the record, we agree that it carefully did so and see no reason to disagree with its findings.

Hale also argues that the court gave insufficient weight to evidence of Awe's "improper behavior" and the children's interests in not disturbing the status quo.

But as Hale herself concedes, the district court did acknowledge Awe's behavior. At multiple points in its analysis, it reasoned that Awe was "not blameless in the parties' interactions" or shown "in a good light." The court just had bigger concerns with Hale's actions. Likewise, the court properly held Awe to his heavy burden to disturb the original placement of the children. But their long-term best interests in being in a stable home and with the parent who will best support their relationship with the other parent outweigh continuing in a damaging status quo.

Finally, Hale contends the district court considered irrelevant evidence about her fiancé. But the district court made clear it did not consider all the evidence that Awe had submitted about Hale's fiancé. True, the court did rely on videos of her fiancé exchanging children with his ex-wife. Yet given the importance of her fiancé in Hale's life and her children's lives, his conduct around his own children is still relevant—indeed, "a significant factor"—in considering the placement that is in the parties' children's best interests. *In re Marriage of Decker*, 666 N.W.2d 175, 179 (Iowa Ct. App. 2003).

In sum, we agree that Awe has met his heavy burden to show that modification of the decree is warranted to place the children in his physical care. While this appeal ends the current dispute, it does not end the need for both Hale and Awe—and the others in their lives—to set aside their differences for the sake of their children. Their son and daughter each deserve healthy relationships with both parents. And that will require their parents to respect each other and focus on the children's best interests—not their own.

**AFFIRMED.**