# IN THE COURT OF APPEALS OF IOWA

---

No. 25-0655
Filed February 25, 2025

---

**In re the Marriage of Hope Marie Shoemaker
and Francis Lee Shoemaker**

Upon the Petition of
**Hope Marie Shoemaker, n/k/a Hope Marie Hearn,**
Petitioner–Appellee,

And Concerning
**Francis Lee Shoemaker,**
Respondent–Appellant.

---

Appeal from the Iowa District Court for Pottawattamie County,
The Honorable Eric J. Nelson, Judge.

---

**AFFIRMED**

---

P. Shawn McCann and Kailey Coughran of McGinn & McCann, P.L.C.,
Council Bluffs,
attorneys for appellant.
Tara Ann Wrighton of Hightower Reff Law, LLC, Omaha, Nebraska,
attorney for appellee.

---

Considered without oral argument by Tabor, C.J., and Badding and Sandy,
JJ.
Opinion by Tabor, C.J.

**TABOR, Chief Judge.**

After waiting a decade to exercise visitation, Francis Shoemaker appeals the denial of his request to hold his former spouse, Hope Hearn, in contempt of a court order. Recognizing the "odd circumstances" at play, the district court decided that Francis did not prove beyond a reasonable doubt that Hope acted in willful defiance of parenting time provisions that were "antiquated to their current status." We find no abuse of discretion in the court's decision and affirm.

## I.     Facts and Prior Proceedings

Francis and Hope divorced in 2014. They have two sons together: N.L.S., born in 2011, and A.L.S., born in 2013. In their dissolution decree, filed in Pottawattamie County, the parents stipulated to joint legal custody with Hope having physical care of the boys. Their stipulated parenting plan provided Francis with visitation every other weekend, starting in April 2014.

But in July 2014, Francis accused Hope of violating that parenting plan. He alleged that she had not allowed him any overnight interactions and failed to "produce the children at the time and place scheduled for visits." He also complained that Hope—without giving him notice—had moved "300 miles from Council Bluffs." The district court declined to hold Hope in contempt and ordered visitation to occur for five hours every other Saturday at a designated location in Onawa beginning in September 2014.

Fast forward ten years, in September 2024, Francis again accused Hope of violating the visitation order. He alleged that she was "no longer" complying with the parenting plan and was not allowing him "reasonable parenting time." At the same time, Francis petitioned to modify the visitation schedule.

In response, Hope moved to dismiss the modification action, alleging that Iowa was an inconvenient forum because she and the children had lived in Missouri for the last ten years. Francis had no contact with the children after the 2014 order, according to Hope. She also stated that she was seeking to register the Iowa decree in their home state of Missouri.

On that jurisdiction question, the Iowa court noted that the children had lived with their mother in Missouri since March 2014. The court described the serious medical condition suffered by A.L.S. and how he saw a "team of doctors" in Missouri. The court also stressed the importance of a structured environment for N.L.S., who was diagnosed with attention deficit hyperactivity and oppositional defiance disorders. From those findings, the court declined, under Iowa Code section 598B.207 (2024), to exercise jurisdiction over Francis's modification action. The court ordered Hope to commence a child-custody proceeding in Henry County, Missouri. Once Missouri authorities agreed to exercise jurisdiction, the Iowa court planned to dismiss the modification petition.

The district court held a show cause hearing in March 2025. At the start, the court noted that Missouri courts had accepted jurisdiction over the child-custody matter, but the contempt action remained on the Iowa court's docket. At the hearing, Francis testified that his "one and only" visit with the children occurred in Onawa in early September 2014. He recalled that the visit at the maternal grandparents' house "didn't go as smoothly" as anticipated. Francis testified that the adults got into a shouting match and the grandfather told him to leave the property.

Hope's counsel then introduced a string of hostile text messages from late September 2014 through January 2015. In those messages, Francis asked Hope to bring the boys to his father's house in Council Bluffs because Francis had lost his driver's license and couldn't travel to Onawa. Hope declined, insisting the court-ordered visits were to take place in Onawa. In November 2014, she texted: "You miss every visit now. . . ." Francis answered: "I'm not going to your grandma's to visit my boys like I did some shit wrong."

In her testimony, Hope explained that she eventually gave up trying to facilitate visits. She testified that after early 2015, she did not hear from Francis until 2023 when he contacted her on Facebook. She felt animosity toward his belated bid to begin parenting. By then, she believed that it was not in the children's best interests to have "weekend parenting time with a stranger."

On cross-examination, counsel for Francis spotlighted Hope's employment as a patrol deputy for a sheriff's office in Missouri.

> Q: Do you think a law enforcement officer is obligated to follow court orders? A: You could say that.

> Q: Okay. But you're saying today that you're not going to follow the court order. A: Yes.

At the end of the hearing, Francis's counsel asked that Hope be held in contempt for her refusal to provide visitation after Francis's renewed request in 2023. The court described the "unusual circumstances" of the contempt action and had this exchange with counsel:

> THE COURT: What about her contention that he never sought to arrange a date to go up on a Saturday to Onawa . . . [because] that's her obligation under the order; right?

> [COUNSEL FOR FRANCIS]: Yes, Your Honor.

THE COURT: To take the kids to Onawa to meet with him. Clearly he chose not to, in 2014, do that—or 2013, excuse me, and going forward. He reaches back out in 2023. My recollection of reviewing all the exhibits is that he doesn't specifically say, hey, meet me in Onawa on Saturday, I want to enforce the court's order. So that's, I think, their argument and so what's your position to that?

[COUNSEL]: Yes, Your Honor.

THE COURT: I mean, for ten years was she to drive the kids to Onawa and he doesn't show up every time and she continues to have to do that? Is that your position?

[COUNSEL]: Well, I think by the letter of the order, that's probably what the obligation is, but I wouldn't hold her to that.

The court then emphasized that Francis did not ask Hope to drive the boys to Onawa. The court observed: "I mean, it's somewhat of a paradox here; right? Like, he's saying, 'I want to reestablish, in general, a connection with the boys,' but the prior order from ten years ago in some ways is antiquated to their current status." Working from that observation, the court declined to hold Hope in contempt: "I can't find beyond a reasonable doubt that she willfully violated the court's order insomuch as she specifically failed to perform a duty on any particular day."

The court returned to the peculiar timing. "[G]iven the odd circumstances in this particular case, even if the elements were met beyond a reasonable doubt, I wouldn't hold her in contempt at this point given the specific facts of the ten-year gap."

Finally, the court clarified, "if Mr. Shoemaker was in front of me three months after [the court's August 2014] order saying she's not going to Onawa, I'm showing up, then surely she'd be held in contempt." But given the decade of both sides ignoring the visitation order, the district court

concluded that no punishment for contempt was warranted under Iowa Code section 598.23.

Francis appeals.

## II. Scope and Standard of Review

We review contempt actions for an abuse of discretion. *Ary v. Iowa Dist. Ct.*, 735 N.W.2d 621, 624 (Iowa 2007). That is true because Iowa Code section 598.23 builds in discretion, providing that a party who willfully disobeys a court order *may* be cited and punished for contempt. Because the statute does not say *shall* be cited and punished, "a trial court is not required to hold a party in contempt even though the elements of contempt may exist." *In re Marriage of Swan*, 526 N.W.2d 320, 327 (Iowa 1995). Thus, unless the district court grossly abused its discretion in declining to hold a party in contempt, we will not reverse. *Id.*

We apply a "special standard of review" to the facts. *In re Marriage of Spears*, 529 N.W.2d 299, 304 (Iowa Ct. App. 1994). When a party claims that a contempt ruling is not supported by substantial evidence, "we examine the evidence, not de novo, but to assure ourselves the proper proof supports the judgment." *Id.* "We are not bound by the trial court's conclusions of law and may inquire whether the trial court applied erroneous rules of law that materially affect its decision." *Id.*

## III. Analysis

To hold Hope in contempt, the court had to find beyond a reasonable doubt she willfully violated the visitation order. *See In re Marriage of Jacobo*, 526 N.W.2d 859, 866 (Iowa 1995). Willfulness means "conduct that is intentional and deliberate with a bad or evil purpose, or wanton and in

disregard of the rights of others, or contrary to a known duty, or unauthorized, coupled with an unconcern whether the contemner had the right or not." *Id.* (citation omitted).

On appeal, Francis contends the district court abused its discretion in finding inadequate proof of a willful violation. In support of that contention, he makes three assertions: (1) the 2014 order mandated visitation every other Saturday in Onawa, (2) Hope knew of the order; and (3) Hope "consistently failed to comply, and Francis's repeated and diverse efforts to exercise his rights were entirely rebuffed without valid legal justification." While the first two points are true, the record does not support his third assertion.

But before deciding whether the court abused its discretion, we must pinpoint the timing of the contumacious actions alleged. At the hearing, the district court guided the attorneys' closing arguments: "there's no doubt that she's not in contempt up to 2023, so let's speak after that." Counsel for Francis agreed, acknowledging "there's probably not sufficient evidence beyond a reasonable doubt from 2014 to 2023, but I think there is absolutely sufficient evidence that [Hope] did willfully violate the court order from that time forward." Counsel insisted that once his client contacted Hope in 2023 and asked for "some time with the boys," she was obligated to provide that visitation, "until there's a court order that says she doesn't have to do that."

Switching gears on appeal, Francis makes a different argument. He cites Hope's conduct before 2023 as ground for a finding of contempt: "Hope blocked all meaningful contact between Francis and the children for over a decade, rendering the 2014 order meaningless." Because that argument was

not presented to the district court, it is not properly before us.[1] *See State v. Rutledge*, 600 N.W.2d 324, 325 (Iowa 1999) ("Nothing is more basic in the law of appeal and error than the axiom that a party cannot sing a song to us that was not first sung in trial court.").

So, limiting our review to Hope's conduct after 2023, we find no abuse of discretion in the district's conclusion that she did not willfully violate the 2014 visitation order. At trial, her counsel stressed: "I do not see anywhere in the evidence where Mr. Shoemaker says, I will be in Onawa on my Saturday, I will meet you there, and that he shows up and my client was not there." Returning to that point on appeal, Hope contends she "was unable to perform the act as ordered, as the order was for Francis to have parenting time in Onawa, Iowa and parenting time could not have occurred if Francis was not present." Hope is right. "A failure to follow a court order is not willful if a contemner shows the order was indefinite or that the contemner was unable to comply with the order." *Ary*, 735 N.W.2d at 624.

But even if Francis did prove a willful violation, the district court did not abuse its discretion in refusing to impose sanctions. We are mindful of Hope's concern that it was not in the children's best interests to dive into unsupervised visits with their father after a decade of no contact. That factor was "worthy of consideration." *See Terry v. Iowa Dist. Ct.*, No. 17-0959, 2018 WL 3471836, at *4 (Iowa Ct. App. July 18, 2018). "[I]n deciding whether to impose punishment for contempt in a particular case," a court may consider all relevant circumstance "not just whether a willful violation of a court order

---

[1] Although Hope does not contest error preservation, we may raise the issue on our own. *See Top of Iowa Coop. v. Sime Farms, Inc.*, 608 N.W.2d 454, 470 (Iowa 2000).

has been shown." *Swan*, 526 N.W.2d at 327. The court's consideration of the "unique circumstances" in this case was a proper exercise of its discretion.

Before closing we need to tie up two loose ends. One, Francis contends that Hope's position as a deputy sheriff heightens the seriousness of her defiance of the court order. Two, he argues that Iowa's transfer of jurisdiction of the ongoing proceedings to modify visitation to Missouri does not excuse past contempt.

As to Hope's employment, we agree that a trial court may consider a person's position of public trust when imposing a contempt sanction. *Cf. State v. Morrison*, 323 N.W.2d 254, 256 (Iowa 1982) (in sentencing case, defendant's status as a judge was integral to the offense and its gravity). But here, deputy or not, Hope could not comply with outdated terms of the 2014 visitation order in 2023.

On jurisdiction, Francis claims that the district court relied on the transfer of the case to Missouri as a reason to avoid contempt findings in Iowa. But Francis does not cite where in the hearing transcript that reliance can be found. *See* Iowa R. App. P. 6.903(2)(a)(8)(3). And we do not read the court's reasoning to rest on the transfer of jurisdiction. At most, the court cautions Hope to comply with any future modification of visitation in Missouri. "[I]t's not a smart thing to tell a court that you're not going to follow orders. Because if the Missouri court directs therapeutic visits or contact of some type, I think you'll have a problem if you don't follow the court's orders."

For these reasons, we affirm the district court's denial of Francis's application to hold Hope in contempt of court.

**AFFIRMED.**